Revised February 14, 2000

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-10990
_____

GREG MARVIN MATTHEW

Petitioner - Appellant

v.

GARY L JOHNSON, DIRECTOR, TEXAS DEPARTMENT
OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION

Respondent - Appellee

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

January 11, 2000

Before KING, Chief Judge, and REAVLEY and BENAVIDES, Circuit
Judges.

KING, Chief Judge:

Greg Marvin Matthew appeals the district court's denial of

his petition for a writ of habeas corpus, arguing that the court

erred in ruling that in pleading nolo contendere, he waived his

claim that the State violated his constitutional rights when it

failed to disclose allegedly material exculpatory information.

We affirm.


I.  FACTS AND PROCEDURAL BACKGROUND

On January 26, 1994, Greg Marvin Matthew, having been accused of raping his step-daughter, pleaded nolo contendere to the charge of aggravated sexual assault of a child. After the entry of the plea, the state trial court found Matthew guilty of aggravated sexual assault of a child and sentenced him to a sixteen-year term of imprisonment. Matthew subsequently filed a direct appeal, which was dismissed for lack of jurisdiction.

On February 28, 1995, Matthew filed an application for habeas relief in state court. He argued that his counsel had been ineffective and that the State had failed to disclose exculpatory evidence. The state trial court, in written reasons, found that Matthew's counsel was not ineffective but did not make any specific findings or conclusions regarding Matthew's claim that the prosecutor had withheld exculpatory evidence. The Texas Court of Criminal Appeals denied Matthew's habeas application without an evidentiary hearing and without written reasons.

In October, 1995, Matthew filed a petition for a writ of habeas corpus in federal district court.[1] He averred that the prosecution "failed to disclose two or more exhibits of exculpatory evidence which would have established [his] innocence to the charge." Relying on Brady v. Maryland, 373 U.S. 83 (1963), Matthew argued that "[t]his overt violation rendered [him] incapable of making a voluntary decision on how to plea[d

---

[1] Matthew initially proceeded pro se but then requested and was granted appointment of counsel.

and] present a viable defense [and] forced [him] into an involuntary 'No-Contest' Plea[]." He further asserted that his counsel was ineffective. The respondent opposed the petition, arguing that Matthew's counsel was not ineffective and that Matthew, having pleaded nolo contendere, had waived his "Brady" challenge.

Noting that several circuits had rejected the respondent's waiver argument, the magistrate judge to whom the matter was preliminarily assigned concluded that Matthew's plea did not waive his "Brady claim." The magistrate judge reasoned that the allegation that the prosecution had withheld evidence, if true, would affect "the very integrity of the plea process." The magistrate judge then ordered that an evidentiary hearing be held.

Before receiving testimony at the evidentiary hearing, the magistrate judge admitted into evidence ten exhibits, consisting of documents that the assistant district attorney ("ADA") had received from Child Protective Services ("CPS"). Among these documents were affidavits and reports describing instances of the victim denying that she had been sexually abused and asserting that Matthew "did not do anything to [her] in the past." Those statements preceded the victim's "outcry" of abuse. One affidavit, completed by the victim's case worker, refers to a post-outcry statement by the victim indicating that an episode of

3

sexual abuse had taken place on Christmas.[2] The documents also include a letter from the victim's mother, case-worker notes and psychiatric assessments, and medical reports indicating that the victim showed physical signs of severe sexual abuse.

At the evidentiary hearing, the magistrate judge heard testimony from the petitioner, the attorney who represented him at his plea hearing, and the ADA who handled the case for the State. The magistrate judge also received proffers from five witnesses offered by the respondent to challenge the materiality of the undisclosed evidence. The ADA testified that he provided Matthew's attorney with a copy of the indictment, the probable cause affidavit, and a report of a medical examination revealing findings consistent with "multiple episodes of vaginal penetration." He was unable to recall providing Matthew with any other documents, but he indicated that he would not have turned over the CPS documents without a court order, which had not been issued.[3] The ADA said he did not consider the withheld documents to be exculpatory because he viewed the victim's pre-outcry denials to be typical of a "delayed outcry" situation.

Matthew's counsel at the plea hearing testified that he recalled reviewing the prosecutor's report, the police report,

_____

[2] Matthew's step-daughter alleged repeated sexual abuse. The indictment charged Matthew with the sexual assault of a child on or about April 1, 1993.

[3] The district court noted that "C.P.S. files are confidential under Texas law and their contents are not to be disclosed absent court order."

4

the indictment, and a medical report. He also testified that he had not conducted any additional discovery or investigation. He stated that Matthew had denied the abuse and had focused on obtaining the shortest possible sentence.

Matthew testified that his lawyer had shown him only a medical report and the capias warrant. He said that he had maintained his innocence to his attorney and, as the record reflects, throughout the nolo contendere plea colloquy. He claimed that, after being sentenced, he wrote to CPS and requested records related to the investigation. He initially received a medical report, the case worker's affidavit noting the accusation of abuse on Christmas, and the affidavit in which the victim denied that Matthew had "do[ne] anything to [her] in the past." Matthew asserted that he was unaware that the victim had alleged abuse on Christmas and that, had he known of this information, he would have supplied an alibi placing him elsewhere at the time. He also indicated that he thought that CPS had brainwashed his step-daughter, and he insisted that he would have gone to trial if he had known about the undisclosed documents.

The parties filed post-evidentiary hearing briefs. The magistrate judge again rejected the respondent's argument that Matthew waived his "Brady claim" by pleading nolo contendere. Despite characterizing the case against Matthew as strong, he found that the withheld evidence was material, concluding that

5

had the evidence been disclosed, Matthew would have refused to plead nolo contendere and insisted on having a trial.  The magistrate judge also found Matthew's ineffective-assistance-of-counsel claim to be without merit.

Matthew filed untimely objections to the magistrate's report, arguing that the magistrate judge had erred in finding that his ineffective-assistance-of-counsel claim was without merit.  The respondent filed an untimely motion for an extension of time within which to file objections to the magistrate's report.  The district court granted the motion, and the respondent subsequently filed objections, arguing that the magistrate judge had applied the wrong standard to determine the materiality of undisclosed evidence in a guilty or nolo contendere plea situation and had erred in finding that the undisclosed evidence was material.  The respondent further averred that the magistrate judge had erred in finding that Matthew's nolo contendere plea did not waive his "<u>Brady</u> claim." Finally, the respondent argued that the magistrate judge should not have considered Matthew's ineffective-assistance-of-counsel claim and should have held instead that the claim was waived by his plea.

The district court adopted the magistrate judge's findings with regard to the claim of ineffective assistance of counsel but declined to accept his recommendation with regard to the claim that the State failed to disclose exculpatory evidence.  It

characterized as an understatement the magistrate judge's description of the case against Matthew as being strong, and noted that efforts of Matthew's lawyers were directed at all times at obtaining plea offers of a sentence acceptable to Matthew. Based on its reading of the law in this circuit, the district court held that Matthew's nolo contendere plea waived his "Brady claim." Accordingly, the district court did not resolve the question whether the undisclosed evidence was material.

Matthew filed an application for a certificate of probable cause ("CPC"), arguing only that the district court erred in finding that his nolo contendere plea waived his "Brady claim." He also filed a notice of appeal. The district court denied the request for a CPC. This court granted a CPC[4] to address the question whether a plea of nolo contendere waives any Brady-based challenge to the plea.


## II. WHETHER MATTHEW'S CLAIM IS TEAGUE-BARRED

This court has not yet resolved whether a nolo contendere or guilty plea waives a subsequent Brady-based challenge. See

---

[4] Matthew filed his habeas petition prior to the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996), so that Act's provisions do not govern the disposition of his petition. See Lindh v. Murphy, 521 U.S. 320 (1997). A prisoner whose habeas petition was filed before April 24, 1996 needs a CPC, instead of a certificate of appealability, for his appeal to proceed. See Green v. Johnson, 116 F.3d 1115, 1120 (5th Cir. 1997).

7

Barnes v. Lynaugh, 817 F.2d 336, 338 (1987).[5]  As Matthew points out, a number of our sister circuits have had occasion to address the issue he raises, and have generally held that a defendant pleading guilty may challenge his conviction on the ground that the State failed to disclose material exculpatory evidence prior to entry of the plea.  See Sanchez v. United States, 50 F.3d 1448 (9th Cir. 1995); United States v. Wright, 43 F.3d 491 (10th Cir. 1994); Tate v. Wood, 963 F.2d 20 (2d Cir. 1992);  White v. United States, 858 F.2d 416 (8th Cir. 1988), cert. denied, 489 U.S. 1029 (1989); Campbell v. Marshall, 769 F.2d 314 (6th Cir. 1985), cert. denied sub nom., Campbell v. Morris, 475 U.S. 1048 (1986).  But see Smith v. United States, 876 F.2d 655 (8th Cir.) (holding that a Brady claim did not survive entry of a guilty plea), cert. denied, 493 U.S. 869 (1989); United States v. Ayala, 690 F. Supp. 1014, 1016 (S.D. Fla. 1988) (stating that a Brady violation does "not affect the consensual nature of the plea thereby impairing its validity"); United States v. Wolczik, 480 F. Supp. 1205 (W.D. Pa. 1979) ("[A] defendant cannot expect to obtain Brady material for use in a pretrial decision to plead guilty.").  However, before we may address the merits of Matthew's claim, we must determine whether we are barred from providing the relief Matthew seeks by Teague v. Lane, 489 U.S. 288 (1989).

---

[5]  In Barnes, we determined that we did not need to address issues similar to those Matthew raises because we did not view the information that was allegedly not disclosed to be Brady material.  See 817 F.2d at 339.

8

"A threshold question in every habeas case . . . is whether the court is obligated to apply the Teague rule to the defendant's claim."  Caspari v. Bohlen, 510 U.S. 383, 389 (1994). In the instant case, the respondent did not raise in its initial briefs the issue of whether Matthew's claim is Teague-barred.  We may, however, exercise our discretion and consider a Teague defense even though the State has implicitly waived it.  See Caspari, 510 U.S. at 389 ("[A] federal court may, but need not, decline to apply Teague if the State does not argue it."); Fisher v. State, 169 F.3d 295, 304-05 (5th Cir. 1999) (applying Teague despite State's implicit waiver).  We decide to do so here.[6]

The Teague rule precludes us from applying "new constitutional rules of criminal procedure  . . . to those cases which have become final before the new rules are announced." Teague, 489 U.S. at 310 (plurality opinion).  The Supreme Court has directed that we apply Teague by proceeding in three steps. See Caspari, 510 U.S. at 390.  First, we must determine the date on which Matthew's conviction and sentence became final.  Next, we must "[s]urve[y] the legal landscape as it then existed and determine whether a state court considering [the defendant's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he]

_____

    [6]  Before oral argument in this case, the court directed the parties to address the question whether Matthew's petition sought the application of a new rule of constitutional criminal procedure such that Teague would counsel against a grant of habeas relief.

9

seeks was required by the Constitution." Id. (citations and internal quotation marks omitted; alterations in original). We reach the third step only if we find that Matthew's claim necessitates a new rule. Under those circumstances, we must determine that the new rule falls within either of two narrow exceptions before we may announce it, and apply it to Matthew's case. See id.; Penry v. Lynaugh, 492 U.S. 302, 313 (1989).

Matthew entered his plea on January 26, 1994. Although he attempted to appeal his conviction, his direct appeal was dismissed on July 18, 1994 because Matthew failed to acquire the court's permission before appealing. See Lyon v. State, 872 S.W.2d 732 (Tex. Crim. App. 1994).[7] Matthew's conviction therefore became final for purposes of Teague on October 17, 1994 – 91 days (the 90th day falling on a Sunday), after his appeal was dismissed. See 28 U.S.C. § 2101; Caspari, 510 U.S. at 390-91; Griffith v. Kentucky, 479 U.S. 314, 321 n.6 (1987); Sup. Ct. R. 13.1, & 30.1. We next turn to the task of surveying the legal landscape as it existed in October 1994.

A. *A New Rule of Criminal Procedure?*

An assessment of whether a new rule would be required in order for Matthew to prevail necessitates an understanding of the

---

[7] Matthew's direct appeal stated that statements were coerced and that "Defendant will show that all original statements by the Plantif [sic] contained information that would have the Defendant acquited [sic] and these statements and facts were not brought forth."

10

propositions Matthew must establish in order to be successful. Cf. Gray v. Netherland, 518 U.S. 152, 167 (1996) (identifying propositions that needed to be proved as part of a Teague analysis). Matthew was charged with sexually assaulting his step-daughter, and faced a possible prison term of ninety-nine years if convicted. His attorneys, so the district court found, directed their efforts at obtaining the best possible plea bargain. Matthew now seeks federal habeas review of his conviction based on his nolo contendere plea, and argues that the State's failure to disclose statements obtained by CPS from his step-daughter prior to entry of his plea constitutes a Brady violation that rendered his plea invalid. To prevail, he would need to establish that (1) failure to disclose the material at issue prior to entry of his plea constitutes a Brady violation; and (2) the antecedent constitutional violation rendered his guilty plea invalid, and thus his claim is not waived by his plea.[8] We next assess whether a new rule would be required in order to establish either of these propositions. See id.

---

[8] Alternatively, he would need to establish that the State's failure to disclose "material" exculpatory information prior to entry of his plea violates the Due Process Clause because it rendered the plea invalid or otherwise constitutionally suspect. This line of reasoning could include an argument that the definition of "material" information should be derived from the Brady v. Maryland line of cases. Because this line of reasoning, like the first, depends on the finding that Matthew's plea was invalid, any conclusions we draw with respect to the legal landscape regarding the validity of pleas would apply to this alternative reasoning.

11

## 1.  A Brady Violation?

Under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), a prosecutor has a duty to disclose evidence favorable to a defendant when that evidence is material to either guilt or punishment.  <u>See</u> 373 U.S. at 87.  The Supreme Court has not as yet ruled on whether a prosecutor's failure to disclose material exculpatory information prior to entry of a guilty plea[9] violates the U.S. Constitution.  A review of the Court's <u>Brady v. Maryland</u> line of cases, however, tends to counter, rather than support, the proposition Matthew would need to establish in order to prevail.

The prosecutor's duty to disclose material exculpatory information is based in the Due Process Clause of the Fourteenth Amendment, and exists to ensure that the accused receives a fair trial, i.e., that an *impartial party's* assessment of the defendant's guilt is based on all the available evidence.  <u>See</u> <u>Mooney v. Holohan</u>, 294 U.S. 103, 112 (1935) (describing the due process requirement as "a requirement that cannot be deemed to be satisfied . . . if a State has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be

---

[9]  Under Texas law, a plea of nolo contendere has the same legal effect as a plea of guilty, with an exception not applicable here.  <u>See</u> TEX. CODE CRIM. P. ANN. art. 27.02(5).  In any event, we may apply law regarding guilty pleas to pleas of nolo contendere.  <u>See</u> <u>Carter v. Collins</u>, 918 F.2d 1198, 1200 n.1 (5th Cir. 1990).

12

perjured"). As the Brady Court noted, "[t]he principle of Mooney v. Holohan is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused. . . . A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on defendant." Brady v. Maryland, 373 U.S. at 87-88.

The subsequent inclusion of impeachment evidence under the Brady rule, see United States v. Bagley, 473 U.S. 667, 676 (1985); Giglio v. United States, 405 U.S. 150, 154 (1972), was also based on the potential effect of undisclosed information on a *jury's* determination of guilt. See id. (citing in support Napue v. Illinois, 360 U.S. 264, 269 (1959)("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence . . . .")). Thus, as was the case in Brady v. Maryland, 373 U.S. at 87-88, the Court's concern focused on ensuring that jury or judge determinations of guilt beyond a reasonable doubt were not contrived through a prosecutor's withholding of material information favorable to the defendant.

The Court's definition of "material information" also reflects the Brady rule's purpose of ensuring a fair trial. The state's obligation to disclose favorable information extends only to information that is material. See Bagley, 473 U.S. at 674-75. "[T]he prosecutor is not required to deliver his entire file to

13

defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial . . . ." Id. at 675 (footnote omitted).[10]  An earlier argument that the materiality test should be defined in terms of the defendant's ability to prepare for trial (rather than in terms of factfinders' assessments of guilt) was explicitly rejected by the Court in United States v. Agurs, 427 U.S. 97 (1976).  As the Court explained, to base the materiality requirement on the effect of the undisclosed information on the defendant's ability to prepare for trial would be unacceptable in part because such a standard would "necessarily encompass incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense."  Id. at 112 n.20.[11]  Because the state's duty extended only to exculpatory information, defining

---

[10]  In subsequent cases, the Court has clarified the materiality requirement, and in so doing has underscored the fundamental tie to the concept of a fair trial.  See, e.g., Kyles v. Whitley, 514 U.S. 419, 434 (1995) ("The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.").

[11]  Issues related to defense strategies and other pretrial decisions were also touched upon in Bagley, 473 U.S. at 682-83. The Bagley Court noted that any influences that nondisclosure might have on pretrial decisions could be assessed in the same manner as other nondisclosures, i.e., via the materiality test set forth in that case.  Under that test, the court must assess whether there was a "reasonable probability" that had disclosure occurred, the outcome of the *trial* would have been different. See Bagley, 473 U.S. at 682-83, 684 (emphasis added).

14

the materiality requirement in terms of defense strategies would be at odds with the scope and purpose of the Brady rule.

The Brady rule's focus on protecting the integrity of trials suggests that where no trial is to occur, there may be no constitutional violation. While describing the purpose of the Brady rule and of the rule's materiality requirement, the Bagley Court noted that

> unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose. . . .
>  . . . But to reiterate a critical point, the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial.

Bagley, 473 U.S. at 675-76 (quoting United States v. Agurs, 427 U.S. 97, 108 (1976)); see also id. at 678 ("[S]uppression of evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial.").[12]  Because a Brady violation is defined in terms of the potential effects of undisclosed information on a judge's or jury's assessment of

---

[12]  The Court has recently restated the distinction between a Brady violation and a failure to disclose information:

> [T]he term "Brady violation" is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence – that is, to any suppression of so-called "Brady material"– although, strictly speaking, there is never a real "Brady violation" unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.

Strickler v. Greene, 119 S. Ct. 1936, 1948 (1999) (footnotes omitted).

15

guilt, it follows that the failure of a prosecutor to disclose exculpatory information to an individual waiving his right to trial is not a constitutional violation.[13] In waiving his or her

_____

[13] Some Court opinions contain language that appears to broaden the reach of Brady v. Maryland to encompass all "proceedings" and "pretrial" decisions. See, e.g., United States v. Bagley, 473 U.S. 667, 682 (1985) ("The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."); id. at 682-83 ("[T]he more specifically the defense requests certain evidence, . . . the more reasonable it is for the defense to assume from the nondisclosure that the evidence does not exist, and to make pretrial and trial decisions on the basis of that assumption."). These statements, however, do not dictate the conclusion that the disclosure of Brady material is necessary to protect the due process rights of those who plead guilty.

Reference to pretrial decisions was no doubt triggered by arguments that reliance on the prosecutor's incomplete responses to a request for Brady material could cause defense counsel to "abandon lines of independent investigation, defenses, or trial strategies that it otherwise would have pursued." Bagley, 473 U.S. at 682. Thus, it is highly uncertain whether included within "pretrial decisions" are decisions regarding whether or not to plead guilty. Reference to a "proceeding" in the Bagley opinion had as its basis the Court's formulation of the "prejudice" component of its competency-of-counsel test in Strickland v. Washington, 466 U.S. 668, 694 (1984). See Bagley, 473 U.S. at 682 ("And in Strickland v. Washington, the Court held that a new trial must be granted when evidence is not introduced because of the incompetence of counsel only if 'there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would be different.'" (citation omitted)(quoting Strickland, 466 U.S. at 694)). That the Strickland Court's formulation contemplated a proceeding at which a factfinder was responsible for determining a defendant's guilt or innocence is demonstrated by reading on: "In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." Strickland, 466 U.S. at 694 (emphasis added). Again, a court reviewing these statements would not feel compelled to conclude that the U.S. Constitution requires that an individual pleading guilty is entitled to the same Brady-based protection as an individual pleading not guilty.

16

right to trial, the defendant eliminates the opportunity for a prosecutor to "contrive[] a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury . . . ." Mooney, 294 U.S. at 112.  Instead, conviction is supported by the defendant's plea.

In light of the Court's Brady v. Maryland line of cases, it is apparent to us that, at a minimum, a state court would not have felt compelled to hold that the prosecutor's failure to supply Matthew with the CPS documents prior to entry of his plea constituted a Brady violation.  Matthew, in order to establish that a prosecutor's failure to disclose exculpatory information prior to entry of a guilty plea is a Brady violation, would require adoption of a new rule – one that seeks to protect a defendant's own decision making regarding the costs and benefits of pleading and of going to trial.

Our conclusion that Matthew seeks a new rule is not at odds with cases he cites in support of his arguments.  By October 1994, a number of court opinions had suggested that pleas could be collaterally attacked on grounds that the state failed to disclose material exculpatory information.  See, e.g., Tate v. Wood, 963 F.2d 20 (2d Cir. 1992); White v. United States, 858 F.2d 416 (8th Cir. 1988); Miller v. Angliker, 848 F.2d 1312 (2d Cir. 1988); Campbell v. Marshall, 769 F.2d 314 (6th Cir. 1985); Fambo v. Smith, 433 F. Supp. 590 (W.D.N.Y.), aff'd, 565 F.2d 233

17

(2d Cir. 1977).  The Sixth Circuit assumed for purposes of its opinion that a Brady violation had occurred, see Campbell, 769 F.2d at 315, but subsequently noted that "there is no authority within our knowledge holding that suppression of Brady material *prior to trial* amounts to a deprivation of due process."  Id. at 322.  The Eighth Circuit followed Campbell's approach.  See White, 858 F.2d at 422.  Thus, neither court found that a prosecutor's failure to disclose exculpatory information prior to entry of a plea was a violation of the U.S. Constitution.

The Second Circuit's approach in Miller and Tate links directly nondisclosure and the Due Process Clause.  However, in light of the Court's holdings, the Second Circuit's approach would appear to adopt a new rule.  The Miller court adapted the Supreme Court's materiality test in order for it to be applicable to the plea context.  See 848 F.2d at 1322.  Under Miller's "objective" test, information is material "if there is a reasonable probability that but for the withholding of the information the accused would not have entered [counsel's] recommended plea but would have insisted on going to full trial."  Id.  The emphasis in this test is not on the influence the undisclosed information possibly would have had on the fairness of a trial – the focus of Brady rule's materiality test – but instead on the accused's decision making process.[14]  The Miller

---

[14]  Compare Miller's test with the Court's description in Hill v. Lockhart, 474 U.S. 52, 58-59 (1985), of how the two-part test laid out in Strickland v. Washington, 466 U.S. 668 (1984),

18

court's test, in defining "material" information in a manner separated from both trial outcomes and counsel's recommendation, arguably creates a due process right where none previously existed.

State courts' decisions, see Caspari, 510 U.S. at 395 ("[I]n the Teague analysis the reasonable views of state courts are entitled to consideration along with those of federal courts."), were also not such that a state court reviewing Matthew's claim would have felt compelled to decide that the rule he seeks is required by the U.S. Constitution. See, e.g., State v. Simons, 731 P.2d 797 (Idaho Ct. App. 1987) (finding failure to disclose

---

should be applied to challenges to guilty pleas raising claims of ineffectiveness of counsel. Under the Hill test, a petitioner must show that (1) his counsel's advice was not "within the range of competence demanded of attorneys in criminal cases," and (2) that "there is a reasonable probability that, but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. Particularly relevant is the Court's description of how the second "prejudice" portion of the Strickland test would be applied in cases involving guilty pleas:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. *This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.* . . . [T]hese predictions of the outcome at a possible trial, where necessary, should be made objectively . . . .

Hill, 474 U.S. at 59 (emphasis added). Thus, in the Hill test, a tie to trial outcomes is maintained.

19

material exculpatory information could render counsel ineffective); Lee v. State, 573 S.W.2d 131 (Mo. Ct. App. 1978) (holding, based on the absence of contrary law, that failure to disclose material exculpatory information entitled defendant to a withdrawal of his plea); Ex parte Lewis, 587 S.W.2d 697 (Tex. Crim. App. 1979) (holding that a prosecutor's duty to disclose favorable information extends to defendants pleading guilty). But see Schmidt v. State, 647 P.2d 796 (Idaho Ct. App. 1982) (holding defendant who pleads guilty waives his right to disclosure of evidence by the prosecutor). For example, although the Texas Court of Criminal Appeals' 2-1 decision in Lewis would appear to dictate at least a portion of the result that Matthew seeks, it is not clear from the opinion whether the duty-to-disclose holding was based in the U.S. Constitution, or in Article 2.01 of the Texas Code of Criminal Procedure. Article 2.01 sets forth the duties of district attorneys. The last sentence of the article, added in 1965, states that "[t]hey shall not suppress facts or secrete witnesses capable of establishing the innocence of the accused." The absence in Lewis of any materiality-based limitation on the duty to disclose suggests that the U.S. Constitution was not the basis for the opinion.

On the basis of our review of the legal landscape existing in October 1994, we cannot conclude that a state court would have felt compelled to decide that a prosecutor's failure to disclose exculpatory information prior to entry of a guilty or nolo

20

contendere plea was a <u>Brady</u> violation, or otherwise a violation of the Due Process Clause.  We turn next to a consideration of whether a state court would have seen the nondisclosure of which Matthew complains as rendering his plea invalid.[15]


## 2.  <u>An Invalid Plea?</u>

It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights.  See <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973); <u>Barnes v. Lynaugh</u>, 817 F.2d 336, 338 (5th Cir. 1987).  Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," <u>Blackledge v. Perry</u>, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself.  See <u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985); <u>Haring v. Prosise</u>, 462 U.S. 306, 320 (1983); <u>Tollett</u>, 411 U.S. at 267; <u>Barnes</u>, 817 F.2d at 338.  A plea not voluntarily and intelligently made has been obtained in violation of due process and is void.  See <u>McCarthy v. United States</u>, 394

---

[15]  Although we conclude that Matthew's claim requires a new rule with regard to the first proposition he asserts – that the nondisclosure was a <u>Brady</u> violation – we think we must also assess whether Matthew's second proposition – that the nondisclosure rendered his plea invalid – would also require a new rule.  This is due primarily to the alternative argument set forth in note 8 <u>supra</u>.  Even if the nondisclosure is not a <u>Brady</u> violation, it may be argued (and Matthew appears on occasion to be arguing) that it made it impossible for Matthew to enter a knowing and intelligent plea.

U.S. 459, 466 (1969).

Matthew's claim does not challenge the power of the State to bring him into court.  Thus, the only means available for challenging his conviction is to claim that his plea is invalid, i.e., it was not knowingly and voluntarily entered into.  See Mabry v. Johnson, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").  We must therefore determine whether a state court in October 1994 would have felt compelled to rule that Matthew's due process rights were violated because of the failure to disclose the CPS documents, whether or not that failure amounts to a Brady violation.  We again find that, given the legal landscape in existence at the time of Matthew's conviction, a state court would not have felt compelled to hold in Matthew's favor, and thus that a new rule would be required.

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill, 474 U.S. at 56 (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)).  Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it", Brady v. United States, 397 U.S. at 749, and may consider such

22

factors as whether there is evidence of factual guilt.[16]

Although the Court's opinions have often used both "voluntary" and "intelligent" to describe various characteristics of constitutionally valid guilty pleas,[17] several conditions appear necessary. The defendant pleading guilty must be competent, see Brady v. United States, 397 U.S. at 756, and must have notice of the nature of the charges against him, see Henderson v. Morgan, 426 U.S. 637, 645 n.13 (1976); Smith v. O'Grady, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. Brady v. United States, 397 U.S. at

---

[16] Although courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it has generally been held that the Constitution does not require that they ensure such a basis exists. See, e.g., Higgason v. Clark, 984 F.2d 203, 208 (7th Cir. 1993) ("'Strong evidence of guilt' may suffice to sustain a conviction on an Alford plea, and may be essential under [FED. R. CRIM. P.] 11, but it is not necessary to comply with the Constitution." (quoting Alford, 400 U.S. at 31)).

[17] Compare Brady v. United States, 397 U.S. 742, 756 (1970) (describing a plea intelligently made as one that has been entered by a defendant with notice of the nature of the charges against him), with Marshall v. Lonberger, 459 U.S. 422, 436 (1983) (describing the same characteristic as belonging to a voluntary plea). The Court has also described a voluntary plea in terms of an intelligent admission of guilt. See Henderson v. Morgan, 426 U.S. 637, 645 n.13 (1976). As a result, we concentrate on the characteristics of valid guilty pleas, and do not attempt to link those characteristics to making a plea "voluntary" or "intelligent."

23

750; <u>Machibroda v. United States</u>, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."); <u>Miller v. Angliker</u>, 848 F.2d 1312, 1320 (2d Cir. 1988).  The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. <u>Henderson</u>, 426 U.S. at 645 n.13; <u>Brady v. United States</u>, 397 U.S. at 755; <u>Machibroda</u>, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted); <u>Miller</u>, 848 F.2d at 1320.  Finally, the defendant must have available the advice of competent counsel.  <u>Tollett</u>, 411 U.S. at 267-68; <u>Brady v. United States</u>, 397 U.S. at 756; <u>McMann v. Richardson</u>, 397 U.S. 759, 771 & n.14 (1970).  The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made.  <u>Cf.</u> <u>Henderson</u>, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); <u>Brady v. United States</u>, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel).

Matthew's claim is not that the state threatened him, or that the state made and then broke promises made to him.  He does

24

not allege that he was incompetent.[18]  He does not suggest that he did not understand the nature of the charges against him or of the constitutional protection he was waiving.  Matthew does not challenge the factual basis for his plea.[19]  He no longer has a claim of ineffective counsel.  In short, Matthew does not suggest that his plea lacks any of the characteristics that the Court has held make up a voluntary and intelligent plea.

On this alone, a state court reviewing Matthew's conviction could determine that his plea was valid.  Moreover, it would be supported in this conclusion by the fact that Matthew stated at his hearing that his plea was freely and voluntarily made, and that he understood the nature of the charges against him and the nature of the constitutional rights he was waiving.  These statements act to create a presumption that in fact the plea is valid.  See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977)("These cases do not in the least reduce the force of the original plea hearing.  For the representations of the defendant,

---

[18]  In Ex parte Lewis, 587 S.W.2d 697 (Tex. Crim. App. 1979), the information not provided to the trial attorney was characterized by the court as raising questions of "the applicant's sanity at the time of the alleged offense, and of his competency to stand trial." 587 S.W.2d at 700.  It has long been held that a conviction of a legally incompetent accused is invalid, see Bishop v. United States, 350 U.S. 961 (1956), and that a guilty plea is valid only if made by a legally competent individual.

[19]  Texas law requires that "in no event shall a person charged be convicted upon his plea without sufficient evidence to support the same." TEX. CODE CRIM. P. ANN. art. 1.15 (West 1991). As is allowed under article 1.15, Matthew consented to the stipulation of evidence against him.

25

his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.").

Matthew's argument reduces to one based on the assessment that had he had the undisclosed information, he would have made a different decision, i.e., had he known of the documents and their contents, he would, as he stated in his evidentiary hearing, "have rolled the dice and risked going to jail for ninety-nine years instead of pleading nolo to a sixteen-year plea bargain." The question, therefore, is whether a state court would have felt compelled by existing law to hold that this made Matthew's plea invalid.

We conclude that the answer to this question is "no." A state court reviewing Brady v. United States, one of the more important cases setting forth the requirements of valid guilty pleas, would find that the Court rejected an argument very similar to Matthew's. See 397 U.S. at 750 ("[T]h[e] assumption [that the accused would not have pleaded guilty except for the death penalty provision] merely identifies the penalty provision as a "but for" cause of his plea. That the statute caused the plea in this sense does not necessarily prove that the plea was coerced and invalid as an involuntary act."). From this language, it would seem that Matthew must do more than claim that

26

the nondisclosure was the "but for" cause of his plea.

To gain an understanding of what more may be required to show the plea is "invalid as an involuntary act," the state court would undoubtedly turn to cases holding that a plea does not preclude collateral attack on grounds that the state failed to disclose favorable information.  See, e.g., Tate v. Wood, 963 F.2d 20 (2d Cir. 1992); White v. United States, 858 F.2d 416 (8th Cir. 1988); Miller v. Angliker, 848 F.2d 1312 (2d Cir. 1988); Campbell v. Marshall, 769 F.2d 314 (6th Cir. 1985); Fambo v. Smith, 433 F. Supp. 590 (W.D.N.Y.), aff'd, 565 F.2d 233 (2d Cir. 1977).[20]  These opinions, however, would provide little guidance. In most instances, the state court would find language noting that the undisclosed information must be the but for cause of the plea, see, e.g., Tate, 963 F.2d at 24 ("The test of materiality in the context of a plea is whether there is a reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but instead would have insisted on going to trial." (citing Miller, 848 F.2d at 1322)); Campbell, 769 F.2d at 324 ("Certainly the knowledge of

---

[20]  In reviewing the legal landscape, the state court would also find a number of decisions holding that a guilty plea waives a Brady-based challenge.  See Smith v. United States, 876 F.2d 655 (8th Cir.) (holding that a Brady claim did not survive entry of a guilty plea), cert. denied, 493 U.S. 869 (1989); United States v. Ayala, 690 F. Supp. 1014, 1016 (S.D. Fla. 1988) (stating that a Brady violation does "not affect the consensual nature of the plea thereby impairing its validity"); United States v. Wolczik, 480 F. Supp. 1205 (W.D. Pa. 1979) ("[A] defendant cannot expect to obtain Brady material for use in a pretrial decision to plead guilty.").

[the undisclosed information] was important to Campbell and his attorney, but we cannot say it would have been controlling in the decision whether to plead."), but little suggesting what a defendant must show in addition to demonstrate involuntariness. Several courts' opinions seem to acknowledge that their analysis required extension of the definition of a valid plea. See Miller, 848 F.2d at 1320 ("[E]ven a guilty plea that was 'knowing' and 'intelligent' may be vulnerable to challenge if it was entered without knowledge of material evidence withheld by the prosecution."); Campbell, 769 F.2d at 318 ("The question then becomes whether this nondisclosure renders involuntary Campbell's otherwise voluntary plea, given without knowledge of this evidence."); id. at 321 ("We believe that in Tollett and the Brady Trilogy the Supreme Court did not intend to insulate all misconduct of constitutional proportions from judicial scrutiny solely because that misconduct was followed by a plea which otherwise passes constitutional muster as knowing and intelligent.").[21] Thus, rather that indicating how a defendant may show his plea was made involuntary by the undisclosed information, courts have simply added to the requirements of a valid plea by suggesting that such a plea must be made with all "material" exculpatory evidence held by the prosecution.

---

[21] The "Brady Trilogy" refers to three "guilty plea" cases the Supreme Court decided on the same day: Brady v. United States, 397 U.S. 742 (1970); McMann v. Richardson, 397 U.S. 759 (1970); and Parker v. North Carolina, 397 U.S. 790 (1970).

The state court reviewing these cases also would be confronted with reasoning supporting their holdings that is at odds with Supreme Court opinions. For example, one reason given for holding that a defendant pleading guilty may attack the plea claiming nondisclosure is that courts cannot "satisfy themselves that pleas of guilty are voluntarily and intelligently made by competent defendants with adequate advice of counsel and that there is nothing to question the accuracy and reliability of the defendants' admissions that they committed the crimes with which they are charged," Brady v. United States, 397 U.S. at 758, without material exculpatory evidence before them. See Fambo v. Smith, 433 F. Supp. 590, 599 (W.D.N.Y. 1977). That *courts* may be benefitted by a review of exculpatory information in discharging their duties would be relevant only if those duties included ascertaining the nature of the information on which the guilty plea was based, and weighing available evidence to determine whether there was a factual basis to support the plea.[22] On

---

[22] What courts are required to do before accepting a guilty plea has been laid out in the Federal Rules, and in a line of cases beginning with Boykin v. Alabama, 395 U.S. 238 (1969). Boykin requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made. *Federal* courts must determine that the plea is voluntary, see FED. R. CRIM. P. 11(d), advise defendants of their rights and determine that the defendant understands the nature of the charge and the effects of their plea, see FED. R. CRIM. P. 11(c), and ascertain sufficient facts to support entry of judgment on the basis of a guilty plea. See FED. R. CRIM. P. 11(f). Several states, including Texas, provide similar protections. See, e.g., TEX. CODE CRIM. P. ANN. arts. 1.13, 1.14, & 1.15. These types of protections attempt to ensure that a defendant's plea is

these points, the Court's description of the allegations in <u>Hill</u>

is illuminating:

> Here petitioner does not contend that his plea was
> "involuntary" or "unintelligent" simply because the State
> through its officials failed to supply him with information
> about his parole eligibility date.  We have never held that
> the United States Constitution requires the State to furnish
> a defendant with information about parole eligibility in
> order for the defendant's plea of guilty to be voluntary,
> and indeed such a constitutional requirement would be
> inconsistent with the current rules of procedure governing
> the entry of guilty pleas in the federal courts.  See Fed.
> Rule Crim. Proc. 11(c).

474 U.S. at 56.  Rule 11(c) also says nothing about the court

needing to ascertain whether the state provided the defendant

with access to material exculpatory information, or on what

information the defendant's guilty plea was based.  Rule 11(f)

also does not require a weighing of the evidence.[23]  In general,

state courts are not required by the Constitution to ensure that

---

voluntary and intelligent, and that he is not "in the position of
pleading voluntarily with an understanding of the nature of the
charge but without realizing that his conduct does not actually
fall within the charge."  FED. R. CRIM. P. 11, advisory committee
notes (1966 Amendments).

[23]  Under Rule 11(f), the court may use any means
appropriate, <u>see</u> FED. R. CRIM. P. 11 advisory committee note (1974
Amendments), to determine "that the conduct which the defendant
admits constitutes the offense charged in the indictment or
information or an offense included therein to which the defendant
has pleaded guilty." FED. R. CRIM. P. 11 advisory committee notes
(1966 Amendments).  The Rule does not require that the court
"weigh evidence to assess whether it is even more likely than not
that the defendant is guilty."  <u>United States v. Maher</u>, 108 F.3d
1513, 1524 (2d Cir. 1997); <u>see also id.</u> ("Indeed, when the court
considers a plea of guilty prior to trial, it often has no actual
evidence to assess."). In fact, in cases involving nolo
contendere pleas, Rule 11(f) does not require courts to ascertain
whether a factual basis for the plea exists.  <u>See</u> FED. R. CRIM. P.
11(f).

a factual basis for a guilty plea even exists. See, e.g., Higgason v. Clark, 984 F.2d 203, 207-08 (7th Cir. 1993); Smith v. McCotter, 786 F.2d 697, 702 (5th Cir. 1986) ("State courts are under no constitutional duty to establish a factual basis for the guilty plea prior to its acceptance . . . ."); Wallace v. Turner, 695 F.2d 545, 548 (11th Cir. 1983) (holding that the Due Process Clause does not impose a constitutional duty on state trial judges to ascertain a factual basis before accepting a plea of guilty or nolo contendere that is not accompanied by a claim of innocence); Wabasha v. Solem, 694 F.2d 155, 157 (8th Cir. 1982) (noting that factual basis requirement comes from the Federal Rules, not the Constitution); cf. McCarthy v. United States, 394 U.S. 459, 465 (1969) (noting that the Rule 11 procedure "has not been held to be constitutionally mandated").

Even more problematic is reasoning based on the Court's observation in Brady v. United States, 397 U.S. at 756, that the decision to plead guilty is often heavily influenced by a defendant's appraisal of the prosecutor's case. See, e.g., Miller, 848 F.2d at 1320. This observation, although undoubtedly applicable to a large number of defendants, may be seen as rather weak support for holdings that allow defendants to challenge their pleas on grounds that the prosecution failed to provide them with exculpatory information it held. The Court has explicitly recognized that the decision whether to plead guilty or go to trial is one made under circumstances of incomplete, and

often inaccurate, information.  See, e.g., McMann, 397 U.S. at 769 ("[T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments.  All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court.  Even then the truth will often be in dispute.").  Mistakes in calculating the strength of the state's case have been declared insufficient to render the plea unintelligent or involuntary.  See Brady v. United States, 397 U.S. at 757 ("A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case . . . .").  State action leading a counseled defendant to perceive he has a weak case has been held insufficient to render a resultant guilty plea invalid.  See, e.g., McMann, 397 U.S. at 771 (holding that a defendant alleging that he pleaded guilty solely because of a prior coerced confession was not entitled to habeas review).

The state court would also be faced with a basic problem: If it were the case that defendants assessing whether to plead guilty must be given an opportunity to weigh the state's case in order to make a voluntary and intelligent decision, requiring that "material" exculpatory information be provided prior to entry of a guilty plea would not achieve the objective.  As the Court noted in Agurs, 427 U.S. at 112, Brady information would provide only part of the picture.  Without all of the state's

32

inculpatory evidence, the defendant could not realistically assess the state's case against him.  Thus, the rule Matthew seeks may be seen as falling short in achieving its intended results.

In light of our survey of the legal landscape, we again find that Matthew requires a new rule in order to prevail.[24]  As a result, we turn next to an assessment of whether the new rules fall into either of the exceptions recognized by the Court.  If they do, we may announce them, and apply them to Matthew's case.  Penry v. Lynaugh, 492 U.S. 302, 313 (1989).


B.  *Exceptions to the Nonretroactivity Principle*

The Teague Court identified two exceptions to the nonretroactivity principle.  Under the first exception, a new rule "should be applied retroactively if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'"  Teague v. Lane, 489 U.S. 288, 311 (1989) (plurality opinion) (quoting Mackey v.

---

[24]  We are aware of the Court's statements in Bousley v. United States, 523 U.S. 614 (1998) that appear to indicate that Teague is not applicable to Matthew's claim.  See 523 U.S. at 620 ("The only constitutional claim made here is that petitioner's guilty plea was not knowing and intelligent.  There is surely nothing new about this principle . . . .").  We do not take these statements to mean that Teague is inapplicable to any case involving a claim that a guilty plea is invalid.  Teague's new-rule doctrine "would be meaningless if applied at this level of generality."  Sawyer v. Smith, 497 U.S. 227, 236 (1990)(rejecting petitioner's argument that Caldwell v. Mississippi, 472 U.S. 320 (1985), "was dictated by the principle of reliability in capital sentencing").

<u>United States</u>, 401 U.S. 667, 692 (1971)(Harlan, J., concurring in part and dissenting in part)).  This exception, as Matthew notes, is not applicable to his case.

Under the second exception, a new rule should be applied retroactively if it is a "'watershed rule[] of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding."  <u>Saffle v. Parks</u>, 494 U.S. 484, 495 (1990).  The <u>Teague</u> Court limited the scope of the second exception "to those new procedures without which the likelihood of an accurate conviction is seriously diminished," noting that it was "unlikely that many such components of basic due process have yet to emerge."  <u>Teague</u>, 489 U.S. at 313.

Matthew argues strenuously that, if we were to find that new rules would be required, those rules would fall under the second exception.  Although we in no way condone the purposeful withholding of information in order to elicit a guilty plea from a defendant, we cannot agree that the rules Matthew seeks to have applied to his case fall within <u>Teague</u>'s second exception.  In light of the existing protections afforded individuals pleading guilty or nolo contendere, we doubt that new rules allowing individuals to challenge the validity of their pleas on grounds that the state failed to supply them with exculpatory information prior to entry of their plea will seriously enhance the accuracy of convictions.  Moreover, we do not see the new rules as on par with a defendant's right to be represented by counsel in all

34

criminal trials for serious offenses, which the Court in <u>Saffle v. Parks</u> viewed as the paradigmatic example of a rule falling within the second exception.  <u>See</u> 494 U.S. at 495.

## III.  CONCLUSION

For the foregoing reasons, we find that the nonretroactivity rule announced in <u>Teague v. Lane</u> prohibits us from granting the relief that Matthew seeks.  As a result, we must affirm the district court's denial of Matthew's petition for a writ of habeas corpus.

AFFIRMED.