Sanders, Janet L., J.
On April 19, 2007, the defendant pleaded guilty before this Court in two separate cases. Both cases involved drug charges which carried minimum mandatory sentences upon conviction. Now the defendant seeks to vacate his guilty pleas on the grounds that in one of the two cases, the state chemist involved in testing the drugs was Annie Dookhan and that, had he known what we now know about her work, he would not have pleaded guilty in either case. The Commonwealth opposes the Motion, in part because it maintains that the defendant has not raised a substantial issue which would merit an evidentiary hearing. This Court concludes that an evidentiary hearing is required.
BACKGROUND
On October 13, 2005, a grand jury returned indictments against the defendant charging him with: 1) trafficking in cocaine in an amount exceeding 200 grams; 2) two counts of assault and battery on a police officer; and 3) resisting arrest. Crim. No. 05-10743 (the “2005 case”). The trafficking charge carried a minimum mandatory sentence of fifteen years in state prison. G.L.c. 94C, §32E(b)(4). A few months later as a result of a separate incident, a grand jury indicted the defendant on three more charges. Crim. No. 06-10378 (the “2006 case”). Those charges were: 1) trafficking in heroin in an amount between 28 grams and 100 grams; 2) a school zone violation; and 3) possession of marijuana. The trafficking charge carried a minimum mandatory sentence of seven years in state prison.
*430 The defendant was represented in both the 2005 case and the 2006 case by attorney Barry Wilson, who has presented the affidavit in support of the Motion now before the Court. The Commonwealth was represented by then Assistant District Attorney Will Freeman. According to Wilson’s affidavit, he and Freeman entered into plea negotiations in an attempt to resolve both cases together. An agreement was ultimately reached whereby the Commonwealth would reduce the lead charge in the 2005 case to a trafficking charge which carried a minimum mandatory sentence of seven years—less than half the mandated sentence on the charge as indicted. See G.L.c. 94C, §32E(b}(2). As to the 2006 case, the Commonwealth agreed to drop the school zone violation and to reduce the lead charge of trafficking in heroin to a trafficking weight which carried a minimum mandatory sentence of five years. G.L.c. 94C, §32E(c)(l). In return for these charge concessions, the defendant agreed to plead guilty in both cases and to join in recommending a sentence of eight to ten years in state prison.
As is typical of most plea bargains, this agreement resulted in some benefit to each party. The government resolved two cases without the time and expense of a trial. More important, with a joint recommendation of eight to ten years in prison on both cases, the Commonwealth was able to ensure that the defendant received a sentence on the heroin charge in the 2006 case well above the minimum mandatory sentence that the defendant would have received in that case if convicted on the trafficking charge as indicted.[1] From the defendant’s perspective, he avoided the possibility of being sentenced in the 2005 case to the much higher sentence of fifteen years in prison if he went to trial on the case as indicted. According to Wilson’s affidavit, this charge concession by the Commonwealth on the 2005 case was what caused him to advise his client to accept the proffered deal and plead guilty to charges in both cases.
On April 19, 2007, the parties appeared before this judge, who engaged in a colloquy which on its face was constitutionally sufficient.[2] That is, the Court asked questions of the defendant to make sure that he was competent to plead guilty, that he understood the rights that he was waiving by entering a guilty plea and was voluntarily relinquishing them, and that he was satisfied with the advice of counsel. The Commonwealth gave a recitation of facts with respect to both cases: with regard to the 2005 case, the government stated that a box in the possession of the defendant at the time of his arrest “contained a white powdery substance later determined to be a large bag of cocaine that weighed in excess of 240 grams.” With respect to the 2006 case, the Commonwealth stated that a backpack in the defendant’s possession “contained nine plastic bags of heroin as well as one plastic bag of marijuana,” and that the “weight of the heroin found inside the backpack was 90 grams.” Following these recitations, the defendant, in response to questions from this Court, admitted that the facts necessary to support each element of the crimes were true.[3] As to the 2006 case, he specifically admitted that the substance in his possession was heroin in the amount of 97 grams. This Court then adopted the joint recommendation of the parties. The defendant received eight-to-ten-year concurrent sentences on the two trafficking charges, with probation to run from and after that period of incarceration on the charges that were not drug related.
There was no specific mention in the plea colloquy as to how the government would prove at trial that the drugs were of the type and quantity alleged. The grand juiy minutes make it clear, however, that the government was solely relying on certificates of analysis. In the 2006 case, the drug certificate introduced to the grand juiy came out of Massachusetts State Police Crime Lab. In the 2005 case, the drug certificate came out of the Hinton Lab in Jamaica Plain; it states that the drugs were received at the lab on August 30, 2005 and analyzed on September 7, 2005. There are two signatures on that drug certificate. One of them is that of Annie Dookhan.
DISCUSSION
The Commonwealth argues that this Court should deny the Motion without an evidentiary hearing. When this Motion was first argued in February 2013, this Court was inclined to agree with the Commonwealth, at least with respect to the adequacy of the factual showing. Wilson’s affidavit states only that his client is entitled to a new trial for both cases because Annie Dookhan was one of the two chemists who signed the drug certificate in the 2005 case. The affidavit contains no facts to suggest that she did anything wrong with respect to testing the drugs in the 2005 case or that in or around that time period, she was generally engaged in any misconduct with respect to drug testing or analysis such that this Court could infer wrongdoing. Since that time, however, more evidence has become available regarding the nature and extent of Dookhan’s misconduct. At least one special magistrate has found a factual and legal basis for allowing a defendant to withdraw his guilty plea where the drug certificate was signed by Dookhan in 2007. See Commonwealth v. Angel D. Rodriguez, Crim. No. 07-875 (Essex Superior Court) [31 Mass. L. Rptr. 218]. The Rodriguez decision was made after an evidentiary hearing, however. Without any basis to make the findings that could possibly entitle the defendant to withdraw his plea, this Court concludes that an evi-dentiaiy hearing is necessaiy.
The Commonwealth argues that no hearing is nec-essaiy because the defendant has not articulated a valid legal basis for setting aside the guilty plea. Certainly, a judge may forego an evidentiaiy hearing if the theory of the motion is not credible or persuasive or if, even assuming the facts alleged by the defendant were true, his motion must be denied as a matter of *431 law. See Commonwealth v. Goodreau, 442 Mass. 341, 348-49 (2004) (affirming lower court in denying new trial motion without a hearing); but see Reporters’ Notes to Rule 30(c)(3) (better practice is to conduct an evidentiaiy hearing if substantial issue is raised). In the instant case, the motion does rest on credible legal grounds—namely, that a guilty plea which is induced by tainted evidence critical to the Commonwealth’s case may not be said to be voluntary, knowing and intelligent. Because the defendant will have the burden of proof at that hearing, some discussion of those grounds might assist the parties as to what this Court expects to be addressed.
Voluntariness
Because a guilty plea waives important constitutional rights, it must be voluntary and knowing, “with sufficient awareness of the relevant circumstances and likely consequences.” Brady v. United States, 397 U.S. 742, 748 (1970).[4] Ordinarily, an adequate plea colloquy ensures that. There may be special circumstances, however, where, regardless of the adequacy of the plea colloquy, a guilty plea is not voluntary. If it was induced by “egregiously impermissible conduct” of a government agent antedating the plea, then such conduct may provide a basis for setting the plea aside. Ferrara v. United States, 456 F.3d 278, 290 (1st Cir. 2006).
In Ferrara, the defendant pleaded guilty to RICO violations which depended in turn on his admission to a particular murder. It was later learned that, before the plea, a witness critical to the government in proving the murder had at one point recanted and that the prosecutor failed to turn over this information to the defense. In affirming the lower court’s decision to vacate the plea, the First Circuit concluded that the guilty plea could not be said to be “voluntary” as that has been defined in Brady v. United States, supra. Although due process “does not normally require the prosecution either to turn over the whole of its file or to disclose every shred of information that might conceivably affect the defendant’s decision-making,” there may indeed be circumstances where government conduct is sufficiently outrageous as to undermine an otherwise valid plea. 456 F.3d at 291; see also United States v. Bouthot, 878 F.2d 1506, 1511 (1st Cir. 1989); Matthew v. Johnson, 201 F.3d 353, 364 n.15 (5th Cir. (2000).
The First Circuit made it clear, however, that its holding would apply only to a fairly narrow category of cases and placed important limits on such claims. First, the evidence that was not disclosed before the guilty plea had to be not only exculpatory but also of the sort that would tend to negate the defendant’s guilt. In other words, it had to be something more than mere impeachment material but must substantially detract from the factual basis that underpinned the defendant’s admission to the charges in question. As already noted, the undisclosed evidence in Ferrara directly undermined the predicate act of murder upon which the RICO violation depended, suggesting that the defendant (as he had maintained even after his plea) played no part in bringing it about. In the instant case, this requirement would at the very least necessitate some evidence that Dookhan was mishandling or manipulating evidence in 2005. See In the Matter of the Personal Restraint of Delmarter, 124 Wash.App. 154, 163, 101 P.3d 111 (2004) (where evidence showed that chemist began stealing heroin from drug lab one year after he conducted tests of controlled substance that supported petitioners’ drug convictions, they were not entitled to new trial). Although this Court is prepared to agree with the defendant that the certificate of analysis in the 2005 case was a critical component of the government’s proof, the defendant at the hearing must present evidence to convince me that the results it reports are questionable enough to call into doubt the defendant’s guilt on that element of the crime to which the drug certificate pertained.
Second, the defendant must show “a reasonable probability that, but for the misconduct, he would not have pleaded guilty and would have insisted on going to trial.” 456 F.3d at 293-94, quoting Hill v. Lockhart, 474 U.S. 59 (1985). On this point, the Commonwealth argues that in drug cases like the instant one, a defendant is in the best position to know whether the drugs he was charged with possessing were actually as alleged in the indictments and that he would never have pleaded guilty if the substances were not as represented. As the defendant points out, however, this argument ignores the realities of the plea driven system. There are reasons why even a defendant who is innocent pleads guilty; where the crime with which he is charged carries a large minimum mandatory sentence, trial is much riskier and the incentive to plead that much greater. The inquiry instead should be on the materiality of the withheld evidence: if it had not been withheld, then what impact would that have had on defense counsel’s advice to his client and to his client’s acceptance of the proffered deal? In Ferrara the defendant’s plea counsel actually testified at the post-conviction hearing as to how and why the undisclosed evidence would have changed his advice. Such testimony may also be required in the instant case.
Finally, there is the requirement—not at issue in Ferrara—that the misconduct be by a government agent. The Commonwealth argues that Dookhan was not a government agent, and that her misconduct therefore cannot be attributed to the prosecution. Certainly, the government cannot turn over information that was never in its possession, custody or control. In defining the reach of those disclosure obligations, however, the Supreme Judicial Court has made it clear that they extend to anyone who has “participated in the investigation or evaluation of the case and who either regularly reports or with reference to the particular case has reported to [the prosecutor’s] *432 office.” Commonwealth v. Daye, 411 Mass. 719, 734 (1992). Although there may be some factual underpinnings necessary before this Court can make a finding as to whether this includes Dookhan, it is certainly common knowledge that the Hinton Lab, like the State Crime Lab, works directly with the prosecution to provide information in support of the government’s case. A hearing may cast additional light on whether Dookhan functioned independently or instead as a member of the prosecution “team.”
The 2006 Case
Without conceding that there is a basis to invalidate the guilty plea in the 2005 case, the Commonwealth points out that Dookhan had nothing to do with the analysis of any drug in the 2006 case: the drug certificates on which the Commonwealth relied in that case emanated from the State Crime Lab, not the lab where Dookhan worked. The defendant responds that the guilty plea in the 2006 case was inextricably tied to the 2005 case; the two cases were packaged together. Although this Court need not reach this issue until and unless the validity of the guilty plea in the 2005 case is decided, I am convinced that there is enough merit in this position such that denial of the motion as to the 2006 case would be premature.
Certainly, the law does not demand that a defendant be free from all psychological or emotional pressures in order for his plea to be voluntary. Commonwealth v. Tirrell, 382 Mass 502 (1981). A criminal defendant may indeed feel compelled to plead guilty because of the fear that, if he did go to trial, the consequences he faces would be much harsher. Commonwealth v. Leate, 367 Mass. 689, 694 (1975). Such fear together with the uncertainly of any trial is what motivates most guilty pleas in our system of justice. What makes the instant case different is the fact that the substantive drug charges carried minimum mandatory sentences, thus ensuring a particular outcome unless the Commonwealth agrees to reduce the charges. In such instances, it is not unusual for that case which carries the larger mandatory sentence to dictate the outcome. That is because it gives the prosecutor leverage that he or she would not have in the case that carried a smaller minimum mandatory: unless the defendant pleads guilty to everything, the assistant district attorney can simply refuse to break down the more serious charge, Thus, without the 2005 case hanging over his head, then the defendant may very well have made a different decision with respect to a plea and possible sentence in the 2006 case. Disposition of his motion for new trial in one may very well affect my decision with respect to the other.
In so stating, however, this Court does not intend to minimize the burden that the defendant still faces. Guilty pleas, like guilty verdicts after trial, carry with them a strong presumption of finality; their conclusiveness is not lightly disturbed. As the courts have repeatedly emphasized, a defendant should not be allowed to withdraw his plea merely because he discovers, long after the fact, some piece of evidence which shows that he misapprehended the strength of the Commonwealth’s case. “[I]t is only when the misapprehension results from some particularly pernicious form of impermissible conduct that due process concerns are implicated.” Ferrara, 456 F.3d at 291. Moreover, it is up to the defendant to prove that, not the Commonwealth to prove the opposite. It remains to be seen whether the defendant will be able to carry his burden here.
For all the foregoing reasons, the Court concludes that an evidentiary hearing is required. Such hearing shall be scheduled promptly with the court clerk assigned to Suffolk Courtroom 907.

Although the Commonwealth also agreed to dismiss the school zone charge and if convicted of that charge, the defendant would have faced additional time, dismissal of the school zone charge is made in the majority of drug cases as an incentive to the defendant to plead guilty even where the related substantive offense is not reduced or broken down.

After arguments on this Motion, this Court ordered and obtained a transcript of the plea colloquy.

The Court did not specifically ask whether the defendant was pleading guilty because he was guilty and for no other reason. Although that omission would not otherwise open the plea to collateral attack, it may be pertinent to the Commonwealth’s claim in opposition to this motion that the defendant admitted his guilt. Rather, he admitted to the facts necessary to find him guilty.

Nhis case should not be confused with Brady v. Maryland, 373 U.S. 83, 87 (1963), which held that prosecutors had a constitutional duty to turn over exculpatory evidence, including impeachment evidence, to ensure that the defendant received a fair trial. This broad duty of disclosure has not been extended to the guilty plea context. See United State v. Ruiz, 536 U.S. 622 (2002) (distinguishing trial from plea, Courtheld that valid plea does not require that defendant have “complete knowledge” so as to impose on prosecution an obligation to turn over impeachment information).