# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

m 99-30739

CHIENO ORMAN,

Petitioner-Appellee,

VERSUS

BURL CAIN,
WARDEN, LOUISIANA STATE PENITENTIARY,

Respondent-Appellant.

Appeal from the United States District Court
for the Western District of Louisiana

October 11, 2000

Before SMITH and DENNIS, Circuit Judges, and HARMON,[*] District Judge.

JERRY E. SMITH, Circuit Judge:

Chieno Orman was granted a writ of habeas corpus regarding his conviction of second-degree murder and resulting life sentence without

[*] District Judge of the Southern District of Texas, sitting by designation.

possibility of parole. The district court held that the state had breached its duty under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), to disclose exculpatory evidence and that Orman's guilty plea violated *Alford v. North Carolina*, 400 U.S. 25, 38 & n.10 (1970), and FED. R. CRIM. P. 11(f), which require courts to ensure that there is a factual basis for entering a conviction whenever a guilty plea is accompanied by a claim of innocence.

On appeal, the state argues that Orman was

barred from seeking habeas relief because he failed to exhaust his state remedies and that the plea violated neither *Brady* nor *Alford*. We conclude that, although Orman satisfied the exhaustion requirement, the plea was validly entered.

First, we reiterate our ruling in *Matthew v. Johnson*, 201 F.3d 353, 361-62 (5th Cir. 2000), *petition for cert. filed* (Apr. 25, 2000) (No. 99-9224), that *Brady* requires a prosecutor to disclose exculpatory evidence for purposes of ensuring a fair trial, a concern that is absent when a defendant waives trial and pleads guilty. Because the Supreme Court has yet to extend *Brady* to guilty pleas (let alone extend it retroactively), the district court erred in requiring the Louisiana courts to do so.

Second, the Louisiana Supreme Court did not act unreasonably when it found that Orman never proclaimed his innocence and therefore that no factual basis for the plea was necessary under *Alford*. We therefore reverse and remand for any necessary further proceedings respecting Orman's other grounds for habeas relief yet to be addressed by the district court.

I.

A.

On the evening of the alleged murder, Orman, his close friend, William Reynolds, and Reynolds' girlfriend, Dee Dee Davis, went out drinking. Orman also ingested LSD.

According to two statements made by Davis, the three subsequently journeyed to the residence of Orman's grandfather, Pete McIntyre. Leaving Reynolds passed out in Orman's truck, Orman and Davis entered the residence to get the keys to McIntyre's truck, confirmed that the truck would start, and returned to the residence.

Orman went back outside, and, shortly thereafter, Davis claims, she heard a gunshot. Orman then returned to the residence and told her he had shot Reynolds. Davis did not see the incident.

On his return to the residence, Orman grabbed Davis by the neck, held the gun beside her head, and discharged it but did not hit her. He then made Davis take her clothes off. After attempting to rape her, he ordered her to dress and get into his truck so he could take her home.

According to Davis, Reynolds, whose body had remained in Orman's truck, was still alive at that time, although he had been shot in the left temple and blood dripped from the wound. When Orman slowed down for a hole in the road, Davis jumped out of the truck and ran into the woods. Investigators found footprints going into the woods at the place Davis had identified as her escape point.

Following her escape from Orman, Davis walked to a nearby residence and told the occupants what had happened. The residents notified the sheriff's department.

Near a bridge that was, according to Davis, in the direction Orman had been traveling at the time of her escape, investigators later found a black baseball cap, bodily fluids, vomit, and Reynolds's body. Similar fluids and vomit were found in Orman's truck. An autopsy showed that Reynolds had died of a single gunshot wound to the left temple.

According to an investigator, Orman then returned to the McIntyre residence, got his grandfather's truck, and picked up his girlfriend, Tina Wood. According to her statement, Orman told her that he had shot Reynolds and that he planned to turn himself in.

2

Before he had the chance to do so, he was apprehended.

In his petition for habeas relief, Orman alleges, *inter alia*, that the state failed to disclose exculpatory evidence. Specifically, he contends that the state disclosed to his counsel only that there was a possible conflict between two of Davis's statements. The state court conducted an *in camera* review of the statements and provided Orman's counsel with redacted copies. Orman claims, however, that the state failed to disclose a statement by Todd DeMars, a teacher at the high school Davis attended.

According to that statement, Davis had seemed depressed four days prior to the murder. When DeMars asked what was wrong, she said she was about to be kicked out of her house. When he asked if there was anything he could do, she replied, "Can you kill my boyfriend?"

Witnesses besides Davis maintained that, on the evening in question, Orman was heavily intoxicated with alcohol, acid, or both. Moreover, during his jailhouse interview, Orman stated that he could not remember shooting Reynolds but did advise officers that there was a gun under the seat of his truck, which the officers subsequently recovered.

### B.

Orman pleaded guilty to second-degree murder. He did not directly appeal.

Nearly three years later, he sought habeas relief in state court. After the trial court denied relief, an intermediate appellate court remanded to give the state the opportunity to establish a significant factual basis for Orman's guilty plea. On remand, the state offered a transcript of the preliminary examination, a co-py of the police report, a copy of the pathologist's report, and a death certificate. The trial court found a significant factual basis for the plea and thereby affirmed the conviction.

On appeal a second time, the intermediate appellate court again set aside the guilty plea for lack of a factual basis. Finally, the state supreme court reversed and reinstated Orman's conviction.

In 1998, Orman filed the instant federal habeas petition. On the magistrate's recommendation, the district court held, first, that the state had failed to disclose exculpatory evidence in violation of *Brady*, and second, that a factual basis to support the plea was required under *Alford* and that such a basis was lacking. The court granted conditional habeas relief for sixty days to give the state the opportunity to rearraign Orman, and stayed its order pending this appeal.

### II.

A habeas petitioner has the burden to prove that he is entitled to relief.[1] In addition, Orman's petition for federal habeas relief is governed by 28 U.S.C. § 2254(d) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[2] under which federal

---

[1] *See Williams v. Taylor*, 120 S. Ct. 1495, 1518 (2000); *Engle v. Isaac*, 456 U.S. 107, 134-35 (1982).

[2] That provision reads as follows:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the

(continued...)

courts may grant the writ on a finding of mere error by a state court, but only if a state court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 120 S. Ct. at 1523.

Barring that, the writ is available only if the state court "unreasonably applies [clearly established federal law, as determined by the Supreme Court] to the facts of the prisoner's case," *id.*, or makes "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[3] It follows from this that mere disagreement with the state court is not enough. The standard is

---

[2](...continued)
claimSS

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

[3] 28 U.S.C. § 2254(d)(2). *See also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

one of objective reasonableness.[4]

In addition, absent special circumstances, a federal habeas petitioner must exhaust his state remedies by pressing his claims in state court before he may seek federal habeas relief.[5] Orman did not directly appeal the entry of his guilty plea and resulting conviction. He did, however, pursue a claim for state habeas relief before filing this federal habeas suit. Federal habeas relief requires no more.[6] Orman there-

---

[4] The Supreme Court recently rejected the use of the "all reasonable jurists" standard adopted in some circuits, including this court. *See Williams*, 120 S. Ct. at 1521-22 ("Stated simply, a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. The federal habeas court should not transform the inquiry into a subjective one by resting its determination instead on the simple fact that at least one of the Nation's jurists has applied the relevant federal law in the same manner the state court did in the habeas petitioner's case. The 'all reasonable jurists' standard would tend to mislead federal habeas corpus courts by focusing their attention on a subjective inquiry rather than on an objective one.").

[5] *See* 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State").

[6] *See Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982) ("The basic compromise which underlies all of exhaustion doctrine requires that the state courts be given the first opportunity to pass upon the petitioner's federal claims. Exhaustion normally requires only that the federal claim have been fairly presented to the highest court of the State, (continued...)

4

fore was entitled to bring this petition for habeas relief.

### III.

Orman claims that the state failed to disclose two pieces of exculpatory evidence to the defense in violation of his constitutional right to due process.[7] The duty articulated in *Brady*, however, was expressly premised on a defendant's right to a fair trial, a concern that does not animate the case *sub judice*.[8]

We do not review Orman's *Brady* claim *de novo* but, instead, examine the case under the deferential lens required by AEDPA. As we have said, AEDPA requires deference unless the state court ruling is contrary to clearly established federal law as determined by the Supreme Court. But "[t]he Supreme Court has not as yet ruled on whether a prosecutor's failure to disclose material exculpatory information prior to entry of a guilty plea violates the U.S. Constitution." *Matthew*, 201 F.3d at 360. Furthermore, any new constitutional rule

announced by the Supreme Court would not apply retroactively unless the new rule satisfied the requirements of *Teague v. Lane*, 489 U.S. 288 (1989).[9]

As we recently held in *Matthew*, which was issued after the district court granted habeas relief in the instant case,

> [t]he *Brady* rule's focus on protecting the integrity of trials suggests that where no trial is to occur, there may be no constitutional violation. . . . Because a *Brady* violation is defined in terms of the potential effects of undisclosed information on a judge's or jury's assessment of guilt, it follows that the failure of a prosecutor to disclose exculpatory information to an individual waiving his right to trial is not a constitutional violation.

*Matthew*, 201 F.3d at 361-62.

There being no reason in 1993, when Orman pleaded guilty, that "a state court would have felt compelled to decide that a prosecutor's failure to disclose exculpatory information before entry of a guilty or *nolo contendere* plea was a *Brady* violation, or otherwise a violation of the Due Process Clause," *id.* at 364, the state's failure to disclose exculpatory materials before Orman's guilty plea could not constitute grounds for the district court to grant habeas relief here. After all, in the absence of contrary, clearly established federal law as determined by the Supreme Court, it was patently reasonable for the Louisiana

---

[6](...continued) either on direct review of the conviction or in a post-conviction attack.") (citations and quotations omitted).

[7] *See Brady,* 373 U.S. at 87 (stating that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

[8] *See Matthew*, 201 F.3d at 360 ("The prosecutor's duty to disclose material exculpatory information is based in the Due Process Clause of the Fourteenth Amendment, and exists to ensure that the accused receives a fair trial, *i.e.,* that an impartial party's assessment of the defendant's guilt is based on all the available evidence.").

[9] *See Teague*, 489 U.S. at 310 ("Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced.").

courts to decide not to extend *Brady* to guilty pleas. Therefore, Orman's *Brady* objections are insufficient as a matter of law to warrant habeas relief.

## IV.

A plea of guilty is consistent with due process only if entered into knowingly, voluntarily, and intelligently. Where the defendant proclaims his innocence but pleas guilty anyway, due process is satisfied only if the state can demonstrate a "factual basis for the plea." *Alford*, 400 U.S. 25, 38 & n.10 (1970).[10]

On habeas review, the district court found Orman's plea wanting under *Alford*. The state claims error, arguing that Orman did not proclaim his innocence before the trial court and that, in any case, an adequate factual basis for the plea was provided on remand from the intermediate Louisiana appellate court.

In light of the fact that this issue was fully litigated in the state courts, the federal district court was authorized to grant federal habeas relief under AEDPA *only* if it was *objectively unreasonable* for the state courts to have denied Orman his requested relief. Because, however, it was reasonable for the Louisiana courts to conclude that Orman had failed to proclaim his innocence in state court, we reverse.

At the plea hearing, the following exchange took place:

THE COURT: Are you pleading guilty

---

[10] *See also* FED. R. CRIM. P. 11(f) ("Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.").

because you actually did the things charged?

COUNSEL FOR ORMAN: Your Honor, uh, for the record we're entering this plea under *North Carolina v. Alford*. It's an *Alford* plea. We are entering that type plea because number one, the defendant still has *amnesia* about certain aspects of the homicide he's pleading guilty to. Number two, because the evidence against him is great, and thirdly, because of the possibility of the death sentence or two life sentences plus 40 years being imposed if he is convicted on all charges.

Under *Alford,* "when a defendant pleads guilty while proclaiming his innocence, the court commits constitutional error by accepting the plea without ascertaining that there is a factual basis for it." *Banks v. McGougan*, 717 F.2d 186, 188 (5th Cir. 1983). But, "absent statements inconsistent with guilt, state courts are not constitutionally required to establish a factual basis for the plea of guilt." *Id.*

Furthermore, it is not incumbent upon the sentencing court to ascertain whether the defendant believes in his innocence. Instead, it is the defendant's duty to assert innocence and thereby bring to the court's attention the need to ensure a factual basis for the guilty plea notwithstanding his claim of innocence. "[T]he due process clause imposes no constitutional duty on state trial judges to ascertain a factual basis prior to accepting a guilty plea unless . . . the state judge is put on notice that there may be some need for such an inquiry (as, for example, when the accused asserts his inno-

cence)." *Id.*[11]

Orman never claimed innocence. To be sure, the fact that counsel claimed that Orman suffered from amnesia indicates that Orman was not admitting guilt. But inability to admit guilt is a far cry from an assertion of innocence. A claim of amnesia, unlike a claim of innocence, is patently *not* a "statement[] inconsistent with guilt." *Banks*, 717 F.2d at 188.

Counsel did specifically refer to the plea as an "*Alford* plea." One plausible inference from that reference is that Orman intended to proclaim his innocence. That inference is not required, however. Indeed, the citation to *Alford* is tempered by the fact that counsel also explicitly conceded that "the evidence against him is great."

In sum, it was not unreasonable for the Louisiana Supreme Court to reject Orman's allegation that he proclaimed his innocence when he pleaded guilty. The district court therefore erred in granting habeas relief pursuant to *Alford*.

REVERSED and REMANDED.

---

[11] *See also Smith v. McCotter*, 786 F.2d 697, 702 (5th Cir. 1986) ("State courts are under no constitutional duty to establish a factual basis for the guilty plea prior to its acceptance, unless the judge has specific notice that such an inquiry is needed.").