# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01708-COA

KENNY WALTON A/K/A "K DOG"                                          APPELLANT

v.

STATE OF MISSISSIPPI                                                APPELLEE

DATE OF JUDGMENT:              09/06/2013
TRIAL JUDGE:                   HON. ALBERT B. SMITH III
COURT FROM WHICH APPEALED:     BOLIVAR COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        TIM C. HOLLEMAN
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY: MELANIE DOTSON THOMAS
NATURE OF THE CASE:            CIVIL - POST-CONVICTION RELIEF
TRIAL COURT DISPOSITION:       POST-CONVICTION MOTION DISMISSED
DISPOSITION:                   REVERSED AND REMANDED - 05/19/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE LEE, C.J., BARNES AND MAXWELL, JJ.

### BARNES, J., FOR THE COURT:

¶1.     In this post-conviction-relief appeal, we must determine if the trial court properly

dismissed Walton's post-conviction motion as a successive writ. Finding error, we reverse

the judgment of the trial court and remand this case with instructions that the trial court make

appropriate findings of fact regarding Walton's ineffective-assistance-of-counsel claim.

### FACTS

¶2.     On Halloween night, October 31, 2007, four assailants wearing masks brutally beat

and robbed a pizza-delivery employee in Cleveland, Mississippi. One of the items stolen was

the victim's cell phone. A few days later, police traced the phone to a house. On the porch

they found the appellant, Walton, talking on the stolen phone. Walton was taken into custody, and he gave two statements. In the first, Walton said he was not involved but heard that his brother, Abraham, had robbed the pizza employee, along with James Thomas and Kenny Henry. Walton claimed he got the cell phone earlier that day from Corderal McKnight. When investigators told Walton that the phone belonged to the pizza-delivery employee, Walton said that Corderal McKnight must have been involved in the robbery. Walton also claimed that Jasmond Matthews must also have been involved.

¶3. In the second statement, taken later that night, Walton first claimed that he overheard Matthews, Michael McGee, and McKnight talking about the robbery. Then he claimed he was present when the victim was beaten and robbed. He claimed that Matthews, McKnight, and McGee beat and robbed the victim while he sat and watched.

¶4. Walton, along with Matthews, McKnight, and McGee, was indicted in September 2008. The indictment charged all four with conspiracy, armed robbery, aggravated assault, arson, and kidnapping. In October 2008, Matthews and McKnight entered guilty pleas to charges relating to the incident. Matthews pled guilty to all five counts and was sentenced to a total of twenty years to serve. McKnight pled guilty to one count of accessory after the fact and was sentenced to five years to serve. One of the conditions of the plea agreements was that Matthews and McKnight testify against their codefendants. They were each interviewed after they pled guilty.

¶5. What they said in those interviews, and what notice Walton's attorney, and Walton

2

himself, had of their statements, are central to this appeal. After Matthews and McKnight entered their guilty pleas, two defendants remained for trial: Walton and McGee. On October 21, 2008, Walton signed a petition to enter a guilty plea to all of the charges: armed robbery, kidnapping, aggravated assault, arson, and conspiracy to commit those crimes. The factual basis in the petition stated simply, "I am guilty as charged."

¶6. On November 14, 2008, the State filed a one-page document in Walton's and McGee's criminal cases entitled "Supplemental State's Report of Discovery Disclosure." The notice was file-stamped on November 14, 2008, by the Bolivar County Circuit Clerk. The notice stated that Matthews and McKnight had been interviewed, but that written reports of their interviews were not expected until the following Monday, November 17, 2008. The document summarized what Matthews and McKnight had to say: "neither the co-defendant Matthews or McKnight inculpate Michael McGee or Kenny Walton but instead name other accomplices." The other accomplices claimed by Matthews and McKnight were Desmond Johnson and Nookie Alexander. The notice contained a certificate of service indicating that it had been mailed to Walton's attorney, Rosharwin Williams, at Post Office Box 184, Indianola, MS 38751, and faxed to Williams at "887-7050." The certificate also indicated that it was mailed and faxed to McGee's attorney, William Martin, in Gulfport, Mississippi.

¶7. On November 21, 2008, Walton entered a guilty plea before Judge Albert Smith III to all five counts. The State recommended that Walton be sentenced to a total of fifteen years. One of the terms of the sentencing recommendation was that sentencing would be

3

deferred pending Walton's "truthful and complete testimony against the remaining co-defendant, Michael McGee."

¶8. Trial for the lone remaining defendant, McGee, was scheduled to begin in May 2009. On May 22, 2009, Walton's attorney, Williams, filed a motion to withdraw Walton's guilty plea. In the motion, Williams claimed "[t]hat [Walton] has recently provided information that calls into question his former guilty plea which would therefore lend it to be set aside," and that "[t]his information has not been shared with his counsel in the past and would now seriously impact and undermine the integrity of his former guilty plea." Finding the motion "frivolous on its face," a different circuit judge denied the motion on May 26, 2009.[1]

¶9. McGee's trial commenced on May 27, 2009. Walton was called as a prosecution witness, but he testified that neither he nor McGee were involved in the crimes. Walton testified that he was afraid and did not understand what was going on in his interviews or his guilty plea. He claimed that he just made up the names and the events related to the investigators. Matthews and McKnight also testified that they committed the crimes with two other individuals, and that McGee and Walton had nothing to do with the crimes. McGee was acquitted.

¶10. On May 27, 2009, the State moved to revoke Walton's bond based upon his failure to testify as expected against McGee. On July 8, 2009, Williams filed a "Renewed Motion

---

[1] There is no explanation in the record why a different circuit court judge ruled on this motion.

to Withdraw Guilty Plea," in which he claimed that "[o]n or about May 20, 2009, Defendant shared [sic] his counsel information that differed from his previous guilty plea and would possibly absolve him from any criminal responsibility. The same was shared with the State in advance of the Michael McGee trial date."

¶11. At the commencement of Walton's sentencing hearing on July 8, 2009, the court allowed Walton's counsel to present argument on his motion to withdraw Walton's guilty plea. Walton's counsel said that he had received some notes two days before McGee's trial was scheduled to commence containing statements from one of Walton's codefendants that Walton was not involved in the crimes. Williams then argued:

> During the trial, the other codefendants as well exculpated my client from any participation in the incident. And so, those bases, since it was new evidence that had not ever been disclosed to me either through my client or anyone else, I thought it was necessary to at least file the motion to withdraw his guilty plea on those bases.

¶12. Circuit Judge Smith said that he had reviewed the guilty-plea transcript and was satisfied that Walton understood what he was charged with and that the plea was a valid one. The State withdrew its prior sentencing recommendation of fifteen years to serve. The court then proceeded to sentence Walton to fifty-one years to serve. The next day, the court entered a written order denying Walton's renewed motion to withdraw his guilty plea.

¶13. Williams filed a "Motion for Reconsideration of Sentence" on August 4, 2009. In it, he argued that Walton's fifty-one-year sentence was disproportionate to the twenty-year sentence of Matthews and the five-year sentence of McKnight, even though both individuals,

5

like Walton, had exonerated McGee at his trial. Williams also argued that a family member of the victim had asked for leniency for Walton.

¶14.    On August 5, 2009, Judge Smith held a hearing on Walton's motion to reconsider his sentence. At the hearing, Williams stated that "the statements of Mr. Matthews that would exculpate Mr. Walton – the statements of Mr. McKnight that would exculpate Mr. Walton were never shared with Counsel." The State responded that Matthews's and McKnight's statements had been disclosed prior to Walton's guilty plea and McGee's trial, and that this was what had led the State to reduce Walton's offer from twenty years to fifteen years, in recognition of the fact that he would be the only witness against McGee. Williams reiterated his argument that "[t]here was no information shared with counsel that those witnesses [(Matthews and McKnight)] that they pled and interviewed would exculpate this particular defendant at trial. And that raises the issue, again, as to *Brady*." The State responded that the records of the clerk's office would confirm that the disclosure had been made.

¶15.    Judge Smith opined that *Pollard v. State*, 12 So. 3d 584, 585 (¶5) (Miss. Ct. App. 2009), stood for the proposition that the court lacked jurisdiction, after the term of court had ended, to revisit the sentence. The court noted that, in its opinion, the only way to attack a guilty plea and sentence was through the post-conviction statutes. The court noted that the issue could be addressed as a post-conviction proceeding under Mississippi Code Annotated section 99-39-5 (Rev. 2007), and defense counsel agreed to do so. The court, without specifically addressing the *Brady* issue, ruled that Walton's guilty plea was knowing and

6

voluntary, and that the sentence would not be altered.

¶16. Walton filed a timely notice of appeal. The appeal in *Walton v. State*, 2009-TS-01310-COA, was dismissed by this Court for lack of jurisdiction because it appeared to be an attempt to appeal a guilty plea and sentence. The dismissal order noted that Walton could challenge his conviction and sentence under the post-conviction statute, Mississippi Code Annotated section 99-39-101 (Rev. 2000).

¶17. With new counsel (appellant's present counsel on appeal), Walton filed a post-conviction-relief (PCR) motion on June 20, 2012. A hearing was held on July 24, 2013. Walton's counsel offered a comprehensive set of the relevant pleadings and transcripts relating to issues set out in the PCR motion, including a detailed affidavit from McGee's counsel, William Martin. The only witness at that hearing was Martin, who testified that he received the notice that Matthews and McKnight would not inculpate Walton or McGee, and that he specifically discussed this with Walton's counsel before Walton pled guilty. Martin said he was surprised when Walton entered his guilty plea. He testified, as an experienced defense attorney, that it would be ineffective assistance of counsel for defense counsel to have received the State's supplemental discovery and not reviewed it, or to have reviewed it and not to have discussed it with his client prior to his guilty plea.

¶18. Walton's PCR motion alleged that he was not advised of "pertinent information and discovery" prior to his guilty plea and that he "was not involved in the crimes committed against [the victim] on October 31, 2007." The PCR motion contained Walton's sworn

7

affidavit as to its truthfulness. The circuit court dismissed the PCR motion on procedural grounds as a successive writ by order filed September 9, 2013.

¶19. Walton has timely appealed, raising the following issues:

1. Whether the trial court erred in dismissing the PCR motion on the ground that it was a successive motion.

2. Whether the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose to Walton the fact that Matthews and McKnight had given statements exculpating Walton before Walton's guilty plea.

3. Alternatively, if the State properly disclosed the Matthews and McKnight exculpatory information, whether Walton's attorney was ineffective in not disclosing this information to Walton prior to his guilty plea.

4. Whether the guilty plea was defective because it lacked an adequate factual basis or explanation of the elements of the offense.

## STANDARD OF REVIEW

¶20. On review of a trial court's rulings relating to a PCR motion, we review findings of fact under the clearly-erroneous standard and its conclusions of law de novo. *Purnell v. State*, 126 So. 3d 949, 951 (¶13) (Miss. 2001).

## DISCUSSION

### I.    Successive Motion

¶21. Walton argues that the trial court erred in dismissing his 2012 PCR motion on the ground that it was a successive motion because no previous PCR motion had been filed. As part of this argument, Walton claims that this Court's decision in his prior appeal, *Walton v. State*, 2009-TS-01310-COA, that there had been no PCR motion, was binding on the trial

8

court and the parties as the "law of the case."

¶22. The order currently being appealed is the trial court's order filed September 9, 2013, dismissing Walton's 2012 PCR motion as a successive writ. In this order, the circuit court held that Walton's August 4, 2009 motion to reconsider sentence was a PCR motion. This ruling was consistent with the trial court's statement, at the hearing on the 2009 motion to reconsider sentence, that the court was treating the motion as a PCR motion, because *Pollard*, 12 So. 3d at 585 (¶5), provided that a circuit court is without authority to modify a sentence after a term of court has ended.

¶23. The State now concedes that, while *Pollard* does provide that a circuit court is without authority to modify a sentence after a term of court has ended, Walton's sentence and the motion to reconsider both occurred in the same vacation period of the court.[2] Because the 2009 motion to reconsider the sentence was not filed as a PCR motion under section 99-39-5, and it was treated that way only because of the trial court's mistaken belief that it had no jurisdiction to consider the motion otherwise, we reaffirm our holding in *Walton v. State*, 2009-TS-01310-COA, that the 2009 motion was not a PCR motion.[3]

---

[2] The State's brief concedes:

[T]he State recognizes that both the imposition of Walton's sentence and the filing of his Motion for Reconsideration occurred outside the November[] 2008 term of court, but during the same non-criminal vacation term. . . . [T]he State recognizes that Walton could not have moved for a reconsideration of his sentencing until after that sentence was, in fact, imposed.

[3] This finding makes it unnecessary to consider whether the "law of the case" doctrine also requires this same result.

¶24. This finding is supported by several factors. PCR motions must be accompanied by a verified oath of the prisoner. Miss. Code Ann. § 99-39-9(3) (Supp. 2014). This was done when Walton filed his 2012 PCR motion, but no verified oath by Walton accompanied the 2009 motion to reconsider sentence. Further, one of the grounds for a PCR motion, and one relied upon in the 2012 PCR motion, is ineffective assistance of counsel. Walton could hardly be expected to raise ineffective assistance of counsel in his 2009 motion to reconsider sentence, which was filed by Walton's counsel at the time; the counsel now claimed to have been ineffective in his handling of Walton's guilty plea.[4]

¶25. We conclude that the trial court erred in dismissing the 2012 PCR motion as a successive writ.

¶26. The State argues that even if the trial court erred in dismissing the 2012 motion as a successive writ, the error was harmless because the court fully considered the motion on the merits. We must disagree. The court specifically noted in its order dismissing the 2012 PCR motion that, because it was procedurally barred as a successive writ, "the issues raised in the petition need not be discussed in detail." As to the claimed *Brady* violation, the court noted that "[n]o evidence was shown to refute the presumption that the State forwarded supplemental discovery to Walton's attorney." Actually, there was evidence refuting this since Walton's attorney specifically claimed not to have received the discovery.

---

[4] The 2012 PCR motion was certainly not successive as to the ineffective-assistance-of-counsel claim which had never been raised before.

10

¶27. Further, Walton claimed that, if his attorney had received the *Brady* material, he was ineffective in failing to discuss it with Walton prior to his guilty plea. Absent from the record is any testimony from Williams, Walton's trial attorney. It is elemental that when a convicted PCR movant files a sworn motion claiming his trial attorney was constitutionally deficient in some way, the client has waived any attorney-client privilege relating to that claim, and the attorney may be subpoenaed to testify and reveal otherwise privileged communications that relate directly to the claimed deficiency. *Henderson v. State*, 769 So. 2d 210, 217 (¶26) (Miss. Ct. App. 2000) (citing *Bennett v. State*, 293 So. 2d 1, 5 (Miss. 1974)). The trial court made no findings of fact on the ineffective-assistance-of-counsel claim. The trial court never addressed whether Walton's attorney had received the supplemental discovery and had discussed the statements of Matthews and McKnight with Walton prior to his guilty plea. The trial court simply said that "Walton's burden to show ineffective assistance of counsel has not been met."

¶28. We do not agree with the State's position that dismissal of the 2012 PCR motion as a successive writ was harmless. There remain crucial questions of fact, which must be resolved before we can ascertain whether Walton's guilty plea should be set aside.

## II. *Brady* Violation

¶29. Walton argues that the "Supplemental State's Report of Discovery Disclosure" never reached his counsel and that this constitutes a *Brady* violation. In *Brady*, 373 U.S. at 87, the United States Supreme Court held that "the suppression by the prosecution of evidence

11

favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To establish a *Brady* violation a defendant must prove:

> (1) that the government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*King v. State*, 656 So. 2d 1168, 1174 (Miss. 1995) (citation omitted).

¶30. The issue of whether the entry of a guilty plea prevents a defendant from asserting a *Brady* violation based upon the suppression of material exculpatory evidence has not been directly addressed by the United States Supreme Court. However, in *Matthew v. Johnson*, 201 F.3d 353, 362-64 (5th Cir. 2000), the United States Court of Appeals for the Fifth Circuit examined *Brady* and cases from other jurisdictions,[5] and explicitly held that a guilty plea precludes a defendant from asserting a *Brady* violation for the prosecution's failure to

---

[5] *See e.g.*, *White v. United States*, 858 F.2d 416, 422 (8th Cir. 1988) (concluding that while "a collateral attack upon a guilty plea based on a claimed *Brady* violation" is not precluded under *Tollett v. Henderson*, 411 U.S. 258 (1973), "habeas relief would clearly be the rare exception"); *Campbell v. Marshall*, 769 F.2d 314, 320 (6th Cir. 1985) (holding the State's failure to disclose potentially exculpatory evidence did not render involuntary an otherwise voluntary, counseled plea of guilty, as the belated discovery of information did not "detract from the credible factual basis" for the petitioner's plea admitted in his own statements at the plea proceeding); *State v. Simons*, 731 P.2d 797 (Idaho Ct. App. 1987) (finding the denial of the defendant's motion to withdraw guilty plea was not an abuse of discretion where the State's withholding of potentially exculpatory evidence did not substantially hamper defense counsel's performance).

disclose exculpatory information. "Because a *Brady* violation is defined in terms of the potential effects of undisclosed information on a judge's or jury's assessment of guilt, it follows that the failure of a prosecutor to disclose exculpatory information to an individual waiving his right to trial is not a constitutional violation." *Id*. at 361-62; *see also Orman v. Cain*, 228 F.3d 616 (5th Cir. 2000) (holding that since "the Supreme Court has yet to extend *Brady* to guilty pleas (let alone extend it retroactively), the district court erred in requiring the Louisiana courts to do so").

¶31.    Shortly thereafter, in *United States v. Ruiz*, 536 U.S. 622 (2002), the Supreme Court did consider a defendant's petition to withdraw her guilty plea because she had not received certain material impeachment evidence from the prosecution.    Concluding that the Constitution does not require the government to disclose material *impeachment* evidence prior to entering a plea agreement with a defendant, the *Ruiz* Court, stated:    "When a defendant pleads guilty[,] he or she, of course, forgoes not only a fair trial, but also other accompanying constitutional guarantees." *Id*. at 628 (citing *Boykin v. Alabama*, 395 U.S. 238 (1969) (emphasis added)).

¶32.    Since *Ruiz*, several cases have extended its holding to cases involving material *exculpatory* evidence.  In *United States v. Conroy*, 567 F.3d 174, 178 (5th Cir. 2009), the Fifth Circuit considered a defendant's claim "that the government withheld allegedly exculpatory evidence in violation of *Brady* by failing to turn over the FBI report containing . . . statements, which rendered her guilty plea unknowing and involuntary."  Specifically,

13

the court examined the defendant's argument "that the limitation of the [Supreme] Court's discussion [in *Ruiz*] to impeachment evidence implies that exculpatory evidence is different and must be turned over before entry of a plea." *Conroy*, 567 F.3d at 179. Maintaining its former holdings in *Matthews* and *Cain*, the Fifth Circuit concluded: "*Ruiz* never makes such a distinction[,] nor can this proposition be implied from its discussion. Accordingly, we conclude that [Pamelia] Conroy's guilty plea precludes her from claiming that the government's failure to disclose the FBI report was a *Brady* violation." *Conroy*, 567 F.3d at 179; *see also Friedman v. Rehal*, 618 F.3d 142, 154 (2d Cir. 2010) (holding that the "Supreme Court has consistently treated exculpatory and impeachment evidence in the same way for the purpose of defining the obligation of a prosecutor to provide *Brady* material prior to trial, . . . and the reasoning underlying *Ruiz* could support a similar ruling for a prosecutor's obligations prior to a guilty plea") (internal citations omitted); *United States v. Moussaoui*, 591 F.3d 263, 286 (4th Cir. 2010) (examining *Ruiz*, *Matthews*, and *Conroy*, and concluding the defendant "fail[ed] to demonstrate that his waiver of the purported right to exculpatory evidence prior to pleading guilty was not made knowingly and intelligently, with sufficient awareness of the relevant circumstances and likely consequences").[6]

---

[6] *But see McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003) (finding that *Ruiz* indicates there is a "distinction between impeachment information and exculpatory evidence of actual innocence[, and] . . . . it is highly likely that the Supreme Court would find a violation of the Due Process Clause if prosecutors . . . have knowledge of a criminal defendant's factual innocence but fail to disclose such information to a defendant before he enters into a guilty plea").

14

¶33.	Based on the Supreme Court's holding in *Ruiz* and the Fifth Circuit's holdings in *Matthew* and *Conroy*, we find Walton's guilty plea precludes him from asserting a *Brady* claim.

### III.	Ineffective Assistance of Counsel

¶34.	Walton makes the alternative argument that even if his attorney, Williams, received the *Brady* disclosure, as there is evidence he did, Williams failed to discuss it with him. It is undisputed that the State possessed the statements of Matthews and McKnight before Walton's guilty plea. The State claims on appeal that the statements are not truly exculpatory.

¶35.	To show ineffective assistance of counsel, Walton must meet a two-part test. He must show: (1) his attorney's performance was deficient, and (2) the deficiency was prejudicial. *Strickland v. Washington*, 466 U. S. 668, 687 (1984). In the context of guilty pleas:

> It is the lawyer's duty to ascertain if the plea is entered voluntarily and knowingly. He must actually and substantially assist his client in deciding whether to plead guilty. It is his job to provide the accused an understanding of the law in relation to the facts. The advice he gives need not be perfect, but it must be reasonably competent. His advice should permit the accused to make an informed and conscious choice.

*Hill v. State*, 60 So. 3d 824, 827 (¶5) (Miss. Ct. App. 2011) (citation omitted). In the context of a guilty plea, Walton must establish that, but for his lawyer's failure to advise him of the exculpatory statements of Matthews and McKnight, he would have elected to go to trial and the outcome would have been different. *See Mitchell v. State*, 58 So. 3d 59, 62 (¶¶14-15) (Miss. Ct. App. 2011).

15

¶36. We do not have the actual statements because they were not recorded. They are summarized in two documents, however. First, the "Supplemental State's Report of Discovery Disclosure" stated that "neither the co-defendant Matthews or McKnight inculpate Michael McGee or Kenny Walton but instead name other accomplices." The State asks that we disregard this summary of the statements and instead focus on another summary of the statements – a supplementary report of Bolivar County Sheriff's Office Investigator Charles Gilmer. The State claims that this is a more accurate summary of Matthews's and McKnight's statements and that it does not exculpate Walton.

¶37. It is unclear when this report was furnished to the defense. It is dated the same date as the "Supplemental State's Report of Discovery Disclosure," November 14, 2008, and it reflects Investigator Gilmer's report of a conversation he had with McKnight on October 29, 2008, after McKnight had entered his guilty plea. This report stated that McKnight's statement appeared to have been rehearsed or coached, and that he appeared nervous and scared, although he denied being threatened by anyone. The report says nothing at all about what McKnight actually said to Gilmer. This same report describes an October 30, 2008 interview of Matthews. According to the report, Matthews stated that McGee was not involved in the crime, and that it was solely Matthews's plan to rob the pizza-delivery man. No other individuals were named as helping Matthews. Gilmer described Matthews's demeanor as "comical and misleading." He wrote that the statement "was out of line with facts established during the initial investigation and appeared to be centered on his

16

attempting to convince this writer that Michael McGee was not involved in this crime." Gilmer ended the interview, and Matthews was returned to custody.

¶38. Whatever the investigators thought of the truthfulness of the statements by McKnight and Matthews, the suspects were questioned about the crime, and neither stated that Walton was involved. The State's attempt to characterize Matthews's and McKnight's statements as nonexculpatory as to Walton is unconvincing.

¶39. The State makes a better argument on the issue of whether the State disclosed these statements to Walton's counsel. Walton argues that the fax number on the fax to Walton's attorney differed from another fax number on a pleading filed by Walton's attorney, and therefore must have been an incorrect fax number. Attorneys may use more than one fax number, however, and there is no record evidence that the fax number on the State's supplemental disclosure was not one used by Williams at that time. Moreover, the certificate on the disclosure certified that it was also mailed to Williams's post-office box seven days before the guilty plea, and there is no evidence that Williams did not receive mail at this post-office box. Finally, the disclosure was simultaneously faxed and mailed to McGee's counsel, William Martin. Martin testified that he received the disclosure and specifically discussed it with Williams prior to Walton's guilty plea. Martin further opined that Williams's failure to inform Walton of the disclosures before acceptance of his plea would constitute ineffective assistance of counsel.

¶40. Williams, however, claimed in the July 8, 2009 hearing on his motion to set aside

Walton's guilty plea, and again in the August 5, 2009 hearing on his motion to reconsider sentence, that he had never received the statements from the State. If this is true, Williams could not possibly have discussed this information with Walton and what effect it might have on Walton's decision whether to go to trial or enter a guilty plea. Here, the trial court made no finding as to whether Williams received the disclosure prior to the acceptance of Walton's plea. If the court believes Williams, there could be no basis for the claim of ineffective assistance of counsel, since he could not have been required to inform Walton of statements he did not have. However, if the trial court finds Martin's testimony credible (that Williams did receive the information), then the trial court must also determine whether Williams discussed the information with Walton and the effect that discussion would have had on Walton's decision to enter his guilty plea.

¶41. Walton argues that the record is clear that his attorney did not share the State's supplemental discovery with him. Williams's statements to the trial court certainly suggest that this is the case. In the August 5, 2009 hearing on Walton's motion to reconsider sentence, Williams told the court that "the statements of Mr. Matthews that would exculpate Mr. Walton – the statements of Mr. McKnight that would exculpate Mr. Walton were never shared with counsel." Later in this hearing, Williams stated:

> [T]he State has not address[ed] the issue of the exculpatory statements that were made by their witnesses, Matthews and McKnight, as relates to Mr. Walton. All they stated was that Mr. Walton would be the sole witness at trial. There was no information shared with counsel that those witnesses that they pled and interviewed would exculpate this particular defendant at trial. And

18

that raises the issue, again, as to *Brady*.[7]

¶42.    The State argues that Williams might have been referring to the trial testimony of Matthews and McKnight, which had not occurred at the time of Walton's guilty plea, and obviously could not constitute a *Brady* violation. Williams did not distinguish between the pretrial statements of Matthews and McKnight and their subsequent trial testimony in his argument to the circuit court, as the State now attempts to do. We note, however, that Williams's argument would have been nonsensical if he were acknowledging receipt of the pretrial statements and claiming only that he had not received the subsequent trial testimony statements. We do not think this is a fair reading of what Williams was claiming. The existing record seems to support Walton's claim that the exculpatory statements of McKnight and Matthews were not disclosed to him prior to his guilty plea.

¶43.    We find *Hannah v. State*, 943 So. 2d 20, 23 (¶3) (Miss. 2006), instructive. Emma Hannah pled guilty to manslaughter in the death of her husband. Her PCR motion, based in part on ineffective assistance of counsel, was denied and subsequently considered by the Mississippi Supreme Court. As to the "reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty, would have insisted on going to trial, and the outcome would have been different," the supreme court noted: "This Court has held that a reasonable probability arises when the ineffectiveness is of such sufficient moment that the

---

[7] Walton's present counsel did not call Williams as a witness at the hearing on Walton's PCR motion, choosing, apparently, to rely upon Williams's statements at the earlier hearings that he had never received the *Brady* disclosure from the State.

19

integrity of the proceeding or our confidence in the outcome has been shaken." *Id.* at 24 (¶7) (citing *Leatherwood v. State*, 539 So. 2d 1378, 1385 (Miss. 1989)). The supreme court then considered exculpatory material in hospital reports and other evidence indicating that someone other than Hannah may have committed the crime and observed that "[t]he question is whether the evidence and testimony, if properly investigated and presented, would have changed the outcome had the parties gone forward" with trial. *Id.* at 25 (¶9). The court noted that, based on the conflicting evidence of guilt, "it [was] reasonable to conclude that the outcome of a jury trial may have been different." *Id.* at (¶10). The supreme court remanded the case to the trial court for a full evidentiary hearing on the ineffective-assistance-of-counsel claims. *Id.* at 27 (¶20).

¶44. This is precisely the sort of record-making that is necessary to resolve the merits of this case. We reverse and remand to the trial court to make findings of fact on whether Williams learned of Matthews's and McKnight's October 2008 statements, whether he reviewed these with Walton prior to entering his guilty plea, and the effect any non-disclosure had on Walton's plea.

### IV.    Inadequate Basis for Guilty Plea

¶45. Upon remand, if the trial court determines that there constitutionally ineffective assistance of counsel, the guilty plea must be set aside, and the issue of the adequacy of the guilty plea becomes moot. On the other hand, a finding that there was no constitutionally ineffective assistance of counsel requires a determination of the adequacy of the guilty plea.

¶46. Walton contends that there was an inadequate factual basis to support his guilty plea.

> A factual basis is an essential part of the constitutionally valid and enforceable decision to plead guilty. This factual basis cannot simply be implied from the fact that the defendant entered a plea of guilty. Rather, there must be an evidentiary foundation in the record which is sufficiently specific to allow the court to determine that the defendant's conduct was within the ambit of that defined as criminal.

*Austin v. State*, 734 So. 2d 234, 236 (¶7) (Miss. Ct. App. 1999) (citation and internal quotation marks omitted). Rule 8.04(A)(3) of the Uniform Rules of Circuit and County Court Practice requires that the court ensure that the guilty plea is voluntarily and intelligently made and that it is supported by an adequate factual basis that the defendant is, in fact, guilty of the crimes to which he pleads guilty.

¶47. At Walton's guilty-plea hearing, the court had the prosecutor read each count of the indictment and then asked Walton if he was guilty of that crime. Each count contained detailed information about how the crime was committed and that Walton, along with other named individuals, committed the crimes. For each count, Walton said that he was guilty. "[I]f sufficiently specific, an indictment or information can be used as the sole source of the factual basis for a guilty plea." *Williams v. State*, 110 So. 3d 840, 843 (¶17) (Miss. Ct. App. 2013) (quoting *Drake v. State*, 823 So. 2d 593, 594 (¶6) (Miss. Ct. App. 2002)).

¶48. In addition, we may examine the entire record to determine the factual basis for the conviction. *Drake*, 823 So. 2d at 594 (¶5). Reference to Walton's out-of-court statement to investigators adds to the evidence of guilt. Walton told law enforcement (in his second

21

statement)[8] that he knew who committed the crimes against the victim. He said Matthews, McKnight, and McGee did it. When asked how he knew, Walton told investigators that he was in the car with McGee, McKnight, and Matthews while they assaulted the victim, but that he sat in the car and did nothing to assist them. The victim testified at trial that three men assaulted him while a fourth individual used the victim's ATM card to withdraw money from his credit union. The victim testified that one man stayed with him while three others went to fill his car up with gasoline. Although the victim could not identify any of the four men involved, his testimony contradicts Walton's statement that he was merely present while McGee, McKnight, and Matthews assaulted and robbed the victim. There was a sufficient factual basis for the guilty plea.

¶49.     Walton also claims that the essential elements of the offenses were not explained to him at his guilty plea.

> It is essential that an accused have knowledge of the critical elements of the charge against him, that he fully understand the charge, how it affects him, the effects of a guilty plea to the charge, and what might happen to him in the sentencing phase as a result of having entered the plea of guilty.

*Austin*, 734 So. 2d at 236-37 (¶12) (citation omitted). Under Mississippi law, before one may be convicted as an aider and abettor:

> [I]t is necessary that the accused associate himself in some way with the crime and participate in it with the intent to bring about the crime. Of course, mere presence at the scene of a crime and knowledge that a crime is being

---

[8] The State offered a copy of this statement into the record at the July 24, 2013 hearing on Walton's 2012 PCR motion.

committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond [a] reasonable doubt that the defendant was a participant and not a knowing spectator. In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense . . . was committed by some person or persons, and that the defendant voluntarily participated in its commission[] with the intent to violate the law.

*Davis v. State*, 980 So. 2d 951, 957-58 (¶12) (Miss. Ct. App. 2007). Walton's admission to being present, along with the victim's testimony that all four individuals actively assisted in committing the crimes, is sufficient to support Walton's convictions. Walton admitted at his guilty-plea hearing that his lawyer explained the law concerning the charges to him. Walton's "[s]olemn declarations in open court carry a strong presumption of veracity." *Baker v. State*, 358 So. 2d 401, 403 (Miss. 1978).

¶50. We find that the factual basis for the guilty plea was sufficient and that the elements of the crimes were sufficiently explained to Walton.

## CONCLUSION

¶51. The circuit court erred in finding that Walton's PCR motion was a successive writ and committed reversible error in dismissing it on this procedural ground. Furthermore, Walton's evidence in support of his PCR motion made out a prima facie case of ineffective assistance of counsel in connection with his guilty plea. The trial court dismissed the PCR motion without addressing this issue substantively or making critical findings of fact, however. We therefore reverse and remand to the trial court for further proceedings consistent with this opinion.

23

¶52. **THE JUDGMENT OF THE BOLIVAR COUNTY CIRCUIT COURT DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO BOLIVAR COUNTY.**

      **LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**