# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00168-COA

**KENNY WALTON A/K/A "K DOG"**                       **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/07/2016 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH III |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | TIM C. HOLLEMAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | MOTION FOR POST-CONVICTION RELIEF DENIED |
| DISPOSITION: | AFFIRMED - 06/20/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES, ISHEE AND GREENLEE, JJ.**

**BARNES, J., FOR THE COURT:**

¶1. Kenny Walton appeals the denial of his motion for post-conviction relief (PCR), which was on remand from this Court. *See Walton v. State*, 165 So. 3d 516 (Miss. Ct. App. 2016) (Cause no. 2013-CA-01708-COA). Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. As the underlying facts of this case are detailed in our prior opinion, we will address only those facts pertinent to the issue raised in this appeal. Walton, Michael McGee, Corderral McKnight, and Jasmond Matthews were indicted on September 17, 2008, for

conspiracy, armed robbery, aggravated assault, arson, and kidnapping. The Bolivar County Circuit Court appointed Walton a public defender, Rosharwin Williams.[1]

¶3. In October 2008, the State's investigator interviewed McKnight and Matthews, who had already entered guilty pleas. A condition of their plea agreements was that they would testify against their codefendants. On November 14, 2008, the State filed a one-page Supplemental State's Report of Discovery Disclosure, stating: "With written summary pending and to be submitted to our office, the State submits that its verbal knowledge of this date is that neither the co-defendant Matthews[, nor] McKnight[,] inculpate[s] Michael McGee or Kenny Walton and [they] instead name other accomplices[.]"[2] A certificate of service indicated the report was mailed and faxed to Walton's attorney, Williams, and McGee's attorney, William Martin. However, Williams denies receiving this discovery. Walton entered a guilty plea to all counts on November 21, 2008, with sentencing to be deferred pending Walton's "truthful and complete testimony against the remaining defendant, Michael McGee."

¶4. On May 22, 2009, Williams filed a motion to withdraw Walton's guilty pleas, which the trial court denied. McGee's trial was held May 27-28, 2009. McGee was acquitted of all charges, as the witnesses, including Walton, denied McGee or Walton was criminally involved. Williams filed a renewed motion to withdraw the guilty plea on July 8, 2009,

---

[1] Williams is presently an assistant district attorney for the Eleventh Circuit Court District.

[2] The other persons later named by Matthews and McKnight were Desmond Johnson and Nookie Alexander.

stating that Walton had shared information with him that "would possibly absolve him from any criminal responsibility," and witnesses who testified at McGee's trial supported Walton's "version of facts."[3] After a hearing, the court denied the motion and sentenced Walton to fifty-one years to serve, as he failed to testify for the State as agreed.

¶5.    Walton filed a motion for reconsideration of his sentence. The trial court held that it was "without authority or jurisdiction to reconsider [Walton's] sentence" and, additionally, there was "no new evidence warranting a reconsideration of sentence" presented at the hearing. The trial court further ruled that the motion to reconsider was actually a PCR motion, which the court denied.

¶6.    Walton filed a PCR motion on June 12, 2012, and the court dismissed the motion as a successive writ. Walton appealed, and on May 19, 2015, this Court remanded the case for an evidentiary hearing on Walton's claim of ineffective assistance of counsel. Specifically, we "reverse[d] and remand[ed] to the trial court to make findings of fact on whether Williams learned of Matthews's and McKnight's October 2008 statements [to the investigator,] whether [Williams] reviewed these with Walton prior to entering his guilty plea, and the effect any non-disclosure had on Walton's plea." *Walton*, 165 So. 3d at 528 (¶44).

¶7.    At an evidentiary hearing held on August 31, 2015, Williams testified that he did not receive the supplemental discovery from the State, which is consistent with his prior testimony. He also claimed he did not know Matthews and McKnight had testified at

---

[3] The information consisted of notes/letters to Walton from McGee and others.

McGee's trial that two other individuals, not Walton and McGee, had participated in the crimes.[4]  However, Williams did aver that, prior to Walton's guilty plea, he "had been in contact" with Matthews and his attorney, and Matthews "indicated that [Walton] was not involved" in the crimes.  Williams said he shared that information with Walton prior to the entry of his guilty plea, and Walton entered his plea in light of that information.  Based on this testimony by Williams, the circuit court found that Walton was not denied effective assistance of counsel in connection with his guilty plea and denied Walton's PCR motion.

¶8.    On appeal, Walton argues that his PCR motion should have been granted, his guilty pleas set aside, and the case remanded "for a full trial on the merits."

## STANDARD OF REVIEW

¶9.    This Court remanded for an evidentiary hearing on whether Williams's representation of Walton constituted ineffective assistance of counsel.  For Walton to prevail on his ineffective-assistance-of-counsel claim, he must prove that Williams's performance was deficient, and Walton suffered prejudice as a result of the deficient performance.  *See Strickland v. Washington,* 466 U.S. 668, 687 (1984).  While there is a presumption "that counsel's representation falls within the range of reasonable professional assistance," the defendant may overcome this presumption upon a showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Thinnes v. State*, 196 So. 3d 204, 210 (¶23) (Miss. Ct. App. 2016) (quoting *Sylvester v. State,* 113 So. 3d 618, 624 (¶22) (Miss. Ct. App. 2013)).  We will affirm a trial

---

[4] Williams noted that he did not attend McGee's trial, nor did he read the transcript.

court's decision after an evidentiary hearing unless the court's findings are "clearly erroneous." *Chase v. State*, 171 So. 3d 463, 479 (¶51) (Miss. 2015) (citation omitted). Deference is given "to the trial court as the sole authority for determining credibility of the witnesses." *Id*. "[Q]uestions of law are reviewed de novo." *Id*.

**DISCUSSION**

¶10. Walton claims the circuit court's finding is "clearly erroneous" because Williams's testimony at the evidentiary hearing contradicted his prior "actions and representations." At the August 5, 2009 hearing on the motion to reconsider Walton's sentence, Williams stated: "In particular, the State has not address[ed] the issue of the exculpatory statements that were made by their witnesses, Matthews and McKnight, as relates to Mr. Walton. . . . There was no information shared with counsel that those witnesses that they pled and interviewed would exculpate this particular defendant at trial." The State objected to that representation, claiming that the "exculpatory nature [of the] testimony of Jasmond Matthews and Corrderal McKnight was disclosed."

¶11. At the August 31, 2015 evidentiary hearing, Williams acknowledged that he had discussed with Matthews's counsel "what his client would possibly testify to, and [he] even met with [Matthews] at one point," prior to Walton's entering his guilty plea. Williams testified: "I spoke with Mr. Matthews, and Mr. Matthews simply told me that [Walton] was not involved. But that was . . . opposite to what my client told me when we had our communications." He further provided:

> Well, I did interview Mr. Matthews; and Mr. Matthews told me that my client
> was not involved . . . . But then, again, when I spoke with my client, he

5

provided me a totally different statement. So I'm left, at that point, with two versions of facts coming from the two different angles; and my client telling me one thing. And my client at that point, decided that it was in his best interests to plead; so that's what he did.

While Williams admitted that he saw the "statement" from the State's investigator, he insisted the statement did not provide any facts exculpating Walton. The statement said that McKnight's comments regarding the incident seemed "rehearsed or coached," and Matthews's "demeanor" was "comical and misleading." It also noted that neither defendant would make eye contact with the investigator, and McKnight became "nervous or scared" when asked if he had been threatened. Nothing in the statement indicated other persons were involved.[5]

¶12. In regard to the other named associates, Johnson and Alexander, Williams told the judge that he did not recall any disclosure prior to the entry of Walton's guilty plea that two other men were involved. Williams testified: "I never knew those names, no. And they never shared those names with me in any way." Thus, while Williams was made aware the other two defendants would not inculpate Walton, he did not know McKnight and Matthews would implicate Johnson and Alexander. McKnight's and Matthews's testimonies did not reveal this information until McGee's trial, which was several months after Walton entered his guilty plea.

¶13. We stated in our prior opinion: "In the context of a guilty plea, Walton must establish that, but for his lawyer's failure to advise him of the exculpatory statements of Matthews and

___

[5] In our prior opinion, we noted that it was "unclear" when this report was furnished to Williams. *See Walton*, 165 So. 3d at 526 (¶37).

6

McKnight, he would have elected to go to trial and the outcome would have been different."

*Walton*, 165 So. 3d at 525 (¶35). Williams testified that he discussed with Walton

Matthews's comments regarding Walton's lack of involvement in the incident, testifying:

> [Walton] made his own decision, based on the discovery, to enter a plea. . . .
> But the basis as to why he pled was on the attorney/client communications and
> in light of what was in the discovery, particularly the phone that he had[6] and
> his statements; and his statements were very incriminating.

When asked by the circuit judge at his guilty plea hearing whether he told his attorney,

Williams, the "truth about the facts of this case," Walton replied, "Yes, sir." He also said he

had not been threatened to enter his guilty plea.

¶14.    Walton contends that Williams "should not [have been] permitted to 'impeach' or

contradict his own previous representations." However, "[t]he purpose of an evidentiary

hearing is for the court to receive evidence in order to make findings of fact." *Rowland v.

Britt*, 867 So. 2d 260, 262 (¶9) (Miss. Ct. App. 2003) (quoting *Lyle v. State,* 756 So. 2d 1,

2 (¶7) (Miss. Ct. App. 1999)). Furthermore, Williams never acknowledged receipt of the

State's supplemental report, and maintains that he never knew about the other two alleged

accomplices prior to Walton's guilty plea. As the trial judge determined in his opinion,

Williams "did not the receive the State's discovery through proper channels," and the three

motions filed by Williams were "because of evidence he had received *from his client* after

the entry of his guilty plea." (Emphasis added). We find the circuit court's findings were

not clearly erroneous.

---

[6] Walton possessed the victim's cell phone when police arrested him. He claimed he
got the phone from McKnight.

¶15. Accordingly, we affirm the court's denial of Walton's PCR motion.

¶16. **THE JUDGMENT OF THE CIRCUIT COURT OF BOLIVAR COUNTY, SECOND JUDICIAL DISTRICT, DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. WESTBROOKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J.**

**WESTBROOKS, J., DISSENTING:**

¶17. I am of the opinion that the trial court erred in denying Walton's request for postconviction relief, and that Walton's conviction represents a miscarriage of justice. Therefore, I respectfully dissent.

¶18. At the evidentiary hearing, I find that Walton showed that his attorney's insufficiency had a reasonable probability of affecting the outcome of the case. "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial [or plea] cannot be relied on as having produced a just result." *Jordan v. State*, 918 So. 2d 636, 647 (¶19) (Miss. 2005) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). "A defendant must demonstrate that his attorney's actions were deficient and that the deficiency prejudiced the defense of the case." *Id*.

¶19. Initially, the public defender, Williams, denied receiving the "supplemental State's report of discovery," which stated that neither codefendants Matthews nor McKnight inculpated Walton in their statements. In fact, they named other accomplices in their statements to investigators. Williams asserted that once he learned of the statements, he filed

8

a motion to withdraw Walton's guilty plea. However, Williams acknowledged that he did not further investigate after speaking with Matthews and his attorney, despite Matthews telling him that Walton was not involved in the crimes. However, at the evidentiary hearing, Williams claimed that he informed Walton of certain information obtained from Matthews and Matthews's attorney. Williams asserted that Walton still decided to enter a plea of guilty to all four counts. However, I find this assertion highly questionable and doubtful.

¶20. Furthermore, Williams had an obligation to further investigate the exculpatory information once he learned of its existence. "[Trial] counsel has, at a minimum, 'a duty to interview potential witnesses and to make an independent investigation of the facts and circumstances of the case.'" *Quitman Cty. v. State*, 910 So. 2d 1032, 1038 (¶14) (Miss. 2005) (quoting *State v. Tokman*, 564 So. 2d 1339, 1342 (Miss. 1990)). Williams testified that if Matthews's and McKnight's statements had been disclosed to him, he would not have advised Walton to enter a guilty plea. The record does not reflect that Williams spoke to McKnight or his attorney regarding a statement that could have possibly exculpated Walton.

¶21. After review of the record, it appears that the communication between Walton and Williams was murky at best. I am of the opinion that Walton would have likely gone to trial to let a jury of his peers determine his guilt or innocence. He would not have entered a guilty plea without his attorney's insistence, and he would not have been sentenced to fifty-one years in the custody of the MDOC.

¶22. While this Court cannot determine the outcome of a jury trial, we can deduce that Walton would not have pleaded guilty to all four counts had he known of the existence of

9

exculpatory evidence. As the majority states: "In the context of a guilty plea, Walton must first establish [a reasonable probability] that, but for his lawyer's failure to advise him of the exculpatory statements of Matthews and McKnight, he would have elected to go to trial and the outcome would have been different." Maj. Op. at (¶13). The Mississippi Supreme Court has held "that a reasonable probability arises when the ineffectiveness is of such sufficient moment that the integrity of the proceeding or our confidence in the outcome has been shaken." *Hannah v. State*, 943 So. 2d 20, 24 (¶7) (Miss. 2006) (citing *Leatherwood v. State*, 539 So. 2d 1378, 1385 (Miss. 1989)).

¶23. I would find that the trial court's decision was clearly erroneous, and I would reverse the dismissal of Walton's PCR motion.

**IRVING, P. J., JOINS THIS OPINION.**